[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14628

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 16, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-03428-CV-RWS-1
BKCY No. 07-78937-BKC-CR

IN RE:  TERRY ALAN TENNYSON,  Debtor.

_____

NANCY J. WHALEY, Trustee,

Plaintiff-Appellant,

versus

TERRY ALAN TENNYSON,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 16, 2010)

Before TJOFLAT, WILSON and EBEL,[*] Circuit Judges.

_____

[*]Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

WILSON, Circuit Judge:

This appeal presents us with a question arising from amendments to Chapter 13 of the United States Bankruptcy Code by the Bankruptcy Abuse Prevention Consumer Protection Act of 2005 ("BAPCPA"). Pub.L. No. 109-8, 119 Stat. 23. Specifically, we are asked to determine whether an above median income debtor, with negative disposable income, may obtain confirmation of a Chapter 13 bankruptcy plan to last for less than five years when the debtor's unsecured creditors have not been paid in full. The answer to this question rests on our interpretation of the term "applicable commitment period." We find that a plain reading of 11 U.S.C. § 1325, a recent United States Supreme Court ruling, and the Congressional intent behind BAPCPA mandate that an above median income debtor remain in bankruptcy for a minimum of five years, unless all unsecured creditor's claims are paid in full.

## I. BACKGROUND

Terry Alan Tennyson, the debtor, filed for Chapter 13 bankruptcy on November 10, 2007. Nancy Whaley, the Trustee, was assigned as the standing Chapter 13 Trustee. Section 1325 of Title 11 of the United States Code details the requirements for confirmation of a Chapter 13 bankruptcy. The debtor is required by 11 U.S.C. § 1325(b)(2) to calculate his disposable income according to the

2

formula on Form 22C. Tennyson's current monthly income was $3,229.37 and his annual income was $38,752.44, which was above the median family income for a household of one in his home state of Georgia. Thus, according to 11 U.S.C. § 1325(b)(4)(A)(ii)(I), Tennyson was an above median income debtor.[1] Since Tennyson was an above median income debtor, 11 U.S.C. § 1325(b)(3)(A) requires that a predetermined set of expenses, listed in 11 U.S.C. § 707(b)(2)(A) & (B), be subtracted from his current monthly income. This yields the disposable income for an above median income debtor, which in Tennyson's case was negative $349.30.

Tennyson proposed a plan to last for three years, without providing for full repayment of his unsecured creditors. Whaley objected on the basis that 11 U.S.C. § 1325(b)(4) requires above median income debtors to remain in bankruptcy for at least five years, unless unsecured claims are paid in full. The bankruptcy court confirmed Tennyson's three year plan and the district court affirmed.

## II. JURISDICTION

The bankruptcy court's confirmation of Tennyson's Chapter 13 plan is a final order. *See Catlin v. United States*, 324 U.S. 229, 234, 65 S. Ct. 631, 633

---

[1]The primary change to Chapter 13 bankruptcy created by BAPCPA was the creation of two classifications of debtors, above median income debtors and below median income debtors. BAPCPA then distinguished above and below median income debtors on the basis of: the length of their "applicable commitment periods," 11 U.S.C. § 1325(b)(4); the calculation of disposable income, 11 U.S.C. § 1325(b)(3); and the determination of the maximum bankruptcy period, 11 U.S.C. § 1322(d).

(1945) ("A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." (citation omitted)). The district court has jurisdiction to hear appeals from all final orders of the bankruptcy court. 28 U.S.C. § 158(a)(1). This Court has jurisdiction over final orders from the district court when acting in an appellate capacity over a bankruptcy court's order. 28 U.S.C. § 158(d)(1).

## III. STANDARD OF REVIEW

Conclusions of law reached by a "bankruptcy court or by the district court are reviewed *de novo*." *In re Bateman*, 331 F.3d 821, 825 (11th Cir. 2003) (alteration omitted) (quotation omitted).

## IV. DISCUSSION

"Applicable commitment period" is a term that appears in § 1325 of the Chapter 13 bankruptcy code. The definition of "applicable commitment period" is found in § 1325(b)(4):

> (4)For purposes of this subsection, the "applicable commitment period"--
> > (A) subject to subparagraph (B), shall be--
> > > (i) 3 years; or
> > > (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than--
> > > > (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

4

. . . .

(B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

Whaley objected to Tennyson's plan because she interpreted the "applicable commitment period" to be the minimum required duration of a debtor's Chapter 13 bankruptcy plan. However, the district court adopted the bankruptcy court's ruling that the "applicable commitment period" "does not stand alone and provide for a strict five year minimum plan duration for all above-median income debtors." Doc. 24 at 6. Rather, the "applicable commitment period" is a multiplier in the § 1325(b)(1)(B) formula, whereby projected disposable income equals disposable income times the "applicable commitment period."

The bankruptcy court pointed to the opening clause of § 1325(b)(4), "For the purposes of this subsection . . . ," for support of this argument. If "applicable commitment period" exists only for the purposes of the subsection, then, the bankruptcy court argued, we must look to see where the term "applicable commitment period" is used in § 1325 and constrain its application to the purposes of that subpart. The only other place that "applicable commitment period" appears is in § 1325(b)(1)(B). Section 1325(b)(1) reads:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--

5

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

According to this interpretation of "applicable commitment period," it exists solely for its function within the confines of § 1325(b)(1)(B). *See In re Kagenveama*, 541 F.3d 868, 876 (9th Cir. 2008) ("Subsections (b)(2) ('disposable income') and (b)(3) ('amounts reasonably necessary to be expended') exist only to define terms relevant to the subsection (b)(1)(B) calculation. Subsection (b)(4), which defines 'applicable commitment period,' is no different."). Thus, when disposable income is negative, projected disposable income will always be negative, regardless of the length of the "applicable commitment period," and unsecured creditors will not recover any of their unsecured claims. Therefore, if disposable income is negative the "applicable commitment period" is inconsequential. As a result, Tennyson was free to enter a bankruptcy plan of less than five years even though his unsecured debts had not been paid in full.

Whaley argues that "applicable commitment period" is a fixed five year term, for above median income debtors, that can only be shortened if all unsecured debts are paid in full in the shorter time period.

A.    *A Plain Reading of Section 1325(b) Requires a Finding That "Applicable*

6

*Commitment Period" is a Temporal Term*

This case is one of statutory interpretation. Specifically, we are asked to define the term "applicable commitment period." To do so, we are guided by the traditional standards of statutory construction:

> The starting point for all statutory interpretation is the language of the statute itself. We assume that Congress used the words in a statute as they are commonly and ordinarily understood, and we read the statute to give full effect to each of its provisions. We do not look at one word or term in isolation, but instead we look to the entire statutory context. We will only look beyond the plain language of a statute at extrinsic materials to determine the congressional intent if: (1) the statute's language is ambiguous; (2) applying it according to its plain meaning would lead to an absurd result; or (3) there is clear evidence of contrary legislative intent.

*United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999) (internal citations omitted).

Applying these principles, we first look at the term "applicable commitment period" and note that "applicable" and "commitment" are modifiers of the noun, the core substance of the term, "period." The plain meaning of "period" denotes a period of time or duration. Merriam Webster's Collegiate Dictionary 864 (10th ed. 1996). "Applicable commitment period" at its simplest is a term that relates to a certain duration, and based on its presence in § 1325, it is a duration relevant to Chapter 13 bankruptcy. The modifier "commitment" then reveals that "applicable commitment period" is a duration to which the debtor is obligated to serve. *See*

7

Merriam Webster's Collegiate Dictionary 231 (10th ed. 1996). Finally, the meaning of "applicable" reflects the fact that there are alternate "commitment periods" depending on the debtor's classification as an above median income debtor or a below median income debtor.

Section 1325(b)(4) clearly says that the "applicable commitment period" **shall** be five years for an above median income debtor, such as Tennyson. "The word 'shall' is ordinarily the language of command." *Alabama v. Bozeman*, 533 U.S. 146, 153, 121 S. Ct. 2079, 2085 (2001) (quotation omitted). The use of the word "shall" "normally creates an obligation impervious to judicial discretion." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35, 118 S. Ct. 956, 962 (1998) (citation omitted). The plain reading of § 1325(b)(4) indicates that an above median income debtor, such as Tennyson, is obligated to form a bankruptcy plan with an "applicable commitment period" of no less than five years, unless his unsecured debts are paid in full.

When the plain reading of a statute produces an unambiguous and reasonable definition of a term, we will not look past that plain reading and read into the text of the statute an unstated purpose. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. __, 129 S. Ct. 1896, 1902 n.6 (2009) ("It is not our role to conform an unambiguous statute to what we think Congress probably intended."

(internal quotation omitted)).  The text of § 1325(b)(4) is clear, unambiguous, and does not result in any absurd consequences.  The "applicable commitment period" **shall be five years**.  The subsection does not state that the "applicable commitment period" exists solely for the § 1325(b)(1)(B) calculation and it certainly does not state that the "applicable commitment period" becomes inconsequential if disposable income is negative.  *See Atlantic Sounding Co. v. Townsend*, 557 U.S. __, 129 S. Ct. 2561, 2575 (2009) ("[W]e will not attribute words to Congress that it has not written.").

Further, treating "applicable commitment period" as a temporal term rather than a multiplier would not render 11 U.S.C. § 1322(d) superfluous.  Section 1322(d) delineates the maximum periods of time for a Chapter 13 bankruptcy while § 1325(b)(4) sets out the minimum periods of time for Chapter 13 bankruptcy, with both the minimums and maximums contingent upon the debtor's classification as an above median or below median income debtor.  At first glance, it may seem as though § 1322(d) is superfluous since both the minimum and maximum plan duration for an above median income debtor is five years.  However, § 1325(b)(4) sets the minimum period for Chapter 13 bankruptcy for an above median debtor at five years with the caveat that the plan may be shorter if all allowed unsecured claims are paid.  Section 1322(d), however, sets the absolute

9

maximum time period of a Chapter 13 bankruptcy plan for an above median income debtor at five years, no exceptions. Thus, it is clear that both § 1322(d) and § 1325(b)(4) are necessary to determine the proper time period that an above median income debtor must stay in Chapter 13 bankruptcy.

However, if we were to interpret "applicable commitment period" as Tennyson advocates, as a multiplier that exists only for § 1325(b)(1), then § 1325(b)(4)(B) would be rendered meaningless and superfluous. Section 1325(b)(1)(A) already provides that the neither the trustee nor the unsecured creditors may object to the bankruptcy plan if unsecured claims are paid in full. Thus, § 1325(b)(4)(B)'s explicit allowance for a shorter "applicable commitment period," when unsecured claims are paid in full, is only necessary if the "applicable commitment period" has a function independent of § 1325(b)(1). This explicit exception is further evidence that Congress intended the "applicable commitment period" to be a temporal requirement independent of § 1325(b)(1). *See Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54, 112 S. Ct. 1146, 1149 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). We find that the plain reading of § 1325(b)(4) defines "applicable commitment period" as a temporal requirement independent of the § 1325(b)(1)(B) calculation.

10

*B.*     *The Supreme Court's Ruling in* Hamilton v. Lanning *Supports a Temporal Interpretation of "Applicable Commitment Period"*

The Supreme Court recently ruled in *Hamilton v. Lanning*, 560 U.S. __, __ S. Ct. __, No. 08-998, slip op. at 18 (2010), that while the mechanical approach of calculating projected disposable income directly as a derivative of disposable income is the proper starting point, bankruptcy courts "may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Lanning* does not directly comment on the definition of "applicable commitment period" but what it does indicate is that § 1325(b) is not a strict mechanical formula existing in a vacuum.

*Lanning* opens the door for the possibility that the final projected disposable income accepted by the bankruptcy court may not be the result of a strict § 1325(b)(1)(B) calculation. The "applicable commitment period" must have an existence independent of the § 1325(b)(1)(B) calculation. If "applicable commitment period" were left dependent upon projected disposable income, as Tennyson recommends, then it would necessarily be dependent on the multitude of indeterminate factors that *Lanning* has allowed to be used in the determination of projected disposable income. This in turn would leave "applicable commitment period" an indeterminate term. In order for "applicable commitment period" to have any definite meaning, its definition must be that of a temporal term derived

11

from § 1325(b)(4) and independent of § 1325(b)(1).

C.      *The Congressional Intent Behind the Bankruptcy Abuse Prevention Consumer Protection Act Supports a Temporal Interpretation of "Applicable Commitment Period"*

While we find that a plain reading of § 1325(b)(4) is more than enough to support Whaley's interpretation of "applicable commitment period", we also note that the legislative intent behind the BAPCPA amendments compels the finding that "applicable commitment period" be read as a temporal requirement for the length of the bankruptcy plan.

"The heart of [BAPCPA's] consumer bankruptcy reforms . . . is intended to ensure that debtors repay creditors the maximum they can afford." H.R. Rep. 109-31(I), p. 2, 2005 U.S.C.C.A.N. 88, 89. The House Report goes on to discuss the BAPCPA amendments to 1322(d) and 1325(b):

> Sec. 318. Chapter 13 Plans To Have 5-Year Duration in Certain Cases. Paragraph (1) of section 318 of the Act amends Bankruptcy Code sections 1322(d) and 1325(b) to specify that a chapter 13 plan may not provide for payments over a period that is not less than five years if the current monthly income of the debtor and the debtor's spouse combined exceeds certain monetary thresholds. If the current monthly income of the debtor and the debtor's spouse fall below these thresholds, then the duration of the plan may not be longer than three years, unless the court, for cause, approves a longer period of up to five years. The applicable commitment period may be less if the plan provides for payment in full of all allowed unsecured claims over a shorter period. Section 318(2), (3), and (4) make conforming amendments to sections 1325(b) and 1329(c) of the Bankruptcy Code.

H.R. Rep. 109-31(I), p.79, 2005 U.S.C.C.A.N. 88, 146.

The "applicable commitment period" is referenced in the above House notes in a section that is discussing amendments to the duration of Chapter 13 bankruptcy. We believe this reflects Congress' intent that the "applicable commitment period" be construed as a temporal term, not a multiplier.

Further, allowing Tennyson to confirm a plan for less than five years would deprive the unsecured creditors of their full opportunity to recover on their claims from Tennyson by way of post confirmation plan modifications. *See* 11 U.S.C. § 1329. For example, if Tennyson's projected disposable income were to increase to a positive number in years four or five, § 1329 would allow unsecured creditors to file for a plan modification. However, if Tennyson obtained confirmation of a three-year plan, unsecured creditors would be deprived of an opportunity to collect on their unsecured claims since Tennyson's plan would have terminated prior to year four. The Congressional intent to make sure that debtors repay creditors up to their maximum ability would be contravened by permitting confirmation of a bankruptcy plan for less than five years when unsecured claims have not been paid in full.

## V. CONCLUSION

We find that the "applicable commitment period" is a temporal term that

prescribes the minimum duration of a debtor's Chapter 13 bankruptcy plan. The only exception to this minimum period, if unsecured claims are fully repaid, is provided in § 1325(b)(4)(B). Tennyson has failed to provide for full repayment of unsecured claims in his proposed bankruptcy plan. Tennyson, therefore, must submit to Chapter 13 bankruptcy for a minimum of five years. We reverse the order of the district court affirming the bankruptcy court's confirmation of Tennyson's three-year bankruptcy plan and remand for proceedings in accord with our ruling.

**REVERSED AND REMANDED.**