In re Orin A. TIMOTHY and Karen D. Timothy, Debtors.

Orin A. Timothy and Karen D. Timothy, Appellants,

v.

Kevin R. Anderson, Chapter 13 Trustee, and United States Trustee, Appellees.

Nos. UT–10–003, 08–28332.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Dec. 29, 2010.

David T. Berry (Leasa M. Tripp with him on the brief) of Berry & Tripp, P.C., Salt Lake City, Utah, for Appellants.

1. Accordingly, this statement of the facts is taken, in part, from the bankruptcy court's memorandum decision sustaining the trustee's objection to Debtors' proposed plan. *See Memorandum Decision, in* Appellant's Appendix ("Appellant's App.") at 113.

2. Debtors' family income exceeds the median income of families the same size in their state as calculated by the Census Bureau. *See* 11 U.S.C. § 101(39A).

Kevin R. Anderson, Trustee.

Before CORNISH, Chief Judge, KARLIN, and SOMERS, Bankruptcy Judges.

## OPINION

CORNISH, Chief Judge.

In this above-median income Chapter 13 case, the debtors appeal the bankruptcy court's order confirming a plan that includes Social Security income as part of projected disposable income for plan payment purposes and requires payments for an applicable commitment period of five years. The debtors agreed to the terms of the plan under protest, but reserved their right to appeal. Having reviewed the record and applicable law, we affirm the bankruptcy court's order.

## I. BACKGROUND FACTS

The relevant facts are not disputed by the parties.[1] Orin A. Timothy and Karen D. Timothy (collectively "Debtors") filed for Chapter 13 relief on November 24, 2008. Debtors were approximately $20,000 over the median income for Utah debtors on the petition date.[2] They were thus required to fully complete Form 22C,[3] and it reflected that their monthly disposable income was *negative* $188.70.[4]

On February 25, 2009, Debtors amended their Schedules I and J because Mr. Timo-

3. Form B22C is a "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income."

4. *See Second Amended Form 22C, in* Appellant's App. at 28–34. Form 22C excludes Social Security income. Debtors' schedules indicated that Mrs. Timothy has monthly Social Security income of $1,141. *See Amended Schedules I and J, in* Appellant's App. at 11–15.

thy lost his job.[5] After taking into consideration the decrease in income as a result of the job loss, Debtors' amended schedules showed a monthly net income figure of $130; this included Mrs. Timothy's Social Security income. Using their Schedules I and J positive net monthly income, Debtors proposed a plan with payments of $130 per month, but without a minimum plan length. Instead, they proposed to make payments only for as long as necessary to return $1,750 to non-priority unsecured creditors.[6] The liquidation analysis in the proposed plan stated that $1,394.06 would be available for general unsecured creditors in a Chapter 7 case.[7] Debtors' proposed plan also provided for payment, through the plan, of attorney fees in the amount of $6,574,[8] as well as trustee fees in the statutorily allowed amount.[9]

Kevin R. Anderson, the Chapter 13 trustee ("Trustee"), objected to Debtors' proposed plan on the basis that it contained no minimum plan length. Trustee argued that because Debtors were above-median income debtors on the date of filing, 11 U.S.C. § 1325(b)(4)(A)(ii)[10] requires an applicable commitment period of five years, unless the plan provides for payment in full of all allowed unsecured claims over a shorter period.[11] Debtors responded, essentially arguing that since they had negative disposable income on Form 22C, they could "pay the zero requirement result to the unsecured creditors," and although they had "volunteer[ed] such payments as they have in this case to achieve a $1,750 return to the unsecured class," they could not be required to make payments for five years.[12]

The bankruptcy court denied confirmation of Debtors' proposed plan,[13] sustaining the Trustee's objection to it, but allowed Debtors an opportunity to amend the plan. In accordance with the bankruptcy court's

5. At the initial confirmation hearing, the bankruptcy court determined that Mr. Timothy's job loss constituted a significant change in circumstances sufficient to rebut the presumption that Debtors' income to fund a plan was the same as the income they had received during the six months prior to filing the Chapter 13 petition when Mr. Timothy was fully employed. *See Memorandum in Support of Confirmation* at 1, *in* Appellant's App. at 60.

6. *See Second Amended Chapter 13 Plan, in* Appellant's App. at 109.

7. *Id.* at 110.

8. *Id.* The proposed plan indicates that the total amount of attorney fees due through confirmation is $7,000, less a pre-petition retainer of $426.

9. *Id.* The proposed plan states that the "trustee may collect the percentage fee allowed under 28 U.S.C. § 586(e)." We note that even given numerous preconfirmation payments, it is difficult to see how the unsecured creditors would receive $1,750, or $1,394.06 for that matter, if all of the claimed attorneys' fees were allowed and paid first, along with

trustee fees. The bankruptcy court's plan confirmation order allowed attorney's fees of $5,274, but did not limit counsel's option to seek additional fees after notice and a hearing on any fee application filed with the court. *See Order Confirming Debtors' Chapter 13 Plan* at 3, ¶ 6, *in* Appellant's App. at 135, 137.

10. Unless otherwise indicated, all future statutory references are to the Bankruptcy Code, Title 11 of the United States Code.

11. *See Memorandum in Support of Chapter 13 Trustee's Objection to Confirmation, in* Appellant's App. at 17–27; 11 U.S.C. § 1325(b)(4)(B).

12. *See Memorandum in Support of Confirmation* at 3–4, *in* Appellant's App. at 60, 62–63. *See also Forward Looking Form 22C, in* Appellant's App. at 44. Apparently, Debtors contended the applicable commitment period was 3 years because after Mr. Timothy lost his job they became below-median income debtors.

13. *Memorandum Decision, in* Appellant's App. at 113.

memorandum decision, Debtors then amended their proposed Chapter 13 plan to require payments of $130 per month for a period of five years. The amended plan was subsequently confirmed by a different judge in the district, with Debtors reserving their right to appeal.[14] Debtors timely filed a notice of appeal with respect to the bankruptcy court's plan confirmation order into which the bankruptcy court's previous memorandum decision and order denying confirmation has merged.[15]

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[16] Neither party elected to have this appeal heard by the United States District Court for the District of Utah. The parties have therefore consented to appellate review by this Court.

■■■ A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' "[17] Here, the bankruptcy court's order confirming Debtors' Chapter 13 plan is final for purposes of appellate review.[18]

## III. STANDARD OF REVIEW

■■■ The facts of this case are undisputed. Debtors appeal the bankruptcy court's interpretation of provisions of the Bankruptcy Code. Thus, this appeal presents only legal issues, i.e., those of statutory construction, for determination. Legal questions are reviewed *de novo*.[19] De novo review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[20]

## IV. ANALYSIS

On appeal, Debtors contend the bankruptcy court erred: 1) when it determined Debtors are required "to pay over the $130.00 net income found on Schedules I and J utilizing social security income for 60 months (the applicable commitment period);"[21] 2) when it included "Debtor's Social Security Income in the Court's definition of 'projected disposable income' ";[22]

---

**14.** *Order Confirming Debtors' Chapter 13 Plan,* in Appellant's App. at 135. *See In re Zahn,* 526 F.3d 1140, 1142 (8th Cir.2008) (a debtor who objects to his own plan may be an aggrieved party with standing to appeal confirmation of such plan; otherwise a debtor would lose the right to appeal because an order denying plan confirmation is interlocutory).

**15.** *In re Wenzel,* 415 B.R. 510, 515 n. 30 (Bankr.D.Kan.2009) (orders denying confirmation without dismissing the proceeding are not final orders for purposes of appeal, but such interlocutory orders merge into the final order; where the notice of appeal identifies the final order, it is sufficient to support appellate jurisdiction to review earlier interlocutory orders).

**16.** 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002; 10th Cir. BAP L.R. 8001–1 (2002).

**17.** *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

**18.** *See United Student Aid Funds, Inc. v. Espinosa,* —— U.S. ——, ——, 130 S.Ct. 1367, 1376, 176 L.Ed.2d 158 (2010).

**19.** *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

**20.** *Salve Regina Coll. v. Russell,* 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

**21.** Appellant's Opening Brief at 11–12.

**22.** *Id.* at 12–13.

and 3) when it "required 60 months of $130.00 per month payments based on Schedule I & J net monthly income." [23] These issues arise as the result of changes made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Although the following explanation has been provided by countless courts addressing post-BAPCPA Chapter 13 issues, it is necessary for us to give a brief explanation of those changes.

As part of BAPCPA's consumer bankruptcy reforms, Congress revised the language of § 707(b), instituting the so-called "means test." The result is that would-be Chapter 7 debtors are shifted into Chapter 13 cases when they have above-median income and the means test indicates they are able to at least partially repay their creditors. Further, the means test provisions of § 707(b) have been incorporated into the Chapter 13 plan confirmation requirements.

Accordingly, when determining disposable income, a Chapter 13 debtor who has above-median income is permitted to subtract from current monthly income only the expenses permitted by § 707(b)(2)(A), i.e., the same expenses allowed under the means test. Those expenses are not a debtor's actual expenses for the maintenance of the debtor and his dependents, but instead are expenses in the amounts of National and Local Standards set by the Internal Revenue Service.[24]

An additional complication is the definition of "current monthly income," from which those expenses are subtracted. This term was added and defined by BAPCPA in § 101(10A), and specifically excludes Social Security income.[25] On the other hand, Schedule I (Current Income of Individual Debtor(s)), as it did pre-BAPCPA, continues to include Social Security income.[26] As a result, the foregoing changes give rise to the scenario presented here: debtors having a negative disposable income pursuant to Form 22C, but a positive monthly income pursuant to Schedules I and J. In this case, Debtors have Form 22C disposable income of negative $188.70, but positive monthly income of $130 according to Schedules I and J.

Ultimately, the question becomes what the minimum obligations are of above-median income debtors for Chapter 13 relief under BAPCPA's tangled statutory web.[27] As tempting as it may be to answer that question, it is necessary to address only the factual realities of these Debtors in this case. Because Debtors have negative Form 22C disposable income, they must propose and make plan payments based on their actual net monthly income, which is revealed only on Schedules I and J, if they are to be eligible for Chapter 13 relief. That is because they must propose a plan that both meets the best-interest-of-creditors test in § 1325(a)(4), and the feasibility test in § 1325(a)(6).

---

23. *Id.* at 13–14.

24. 11 U.S.C. § 1325(b)(3); 11 U.S.C. § 707(b)(2)(A)(ii)(I).

25. 11 U.S.C. § 101(10A)(B).

26. *See Official Form 6I, Schedule I, l.* 11, "Social Security or other government assistance."

27. *See, e.g., In re Thompson,* 439 B.R. 140, 2010 WL 3583400, at *2 (8th Cir. BAP 2010) (holding that exclusion of Social Security income from plan payments cannot be considered in determining whether the plan was proposed in good faith because "[t]he plain language of the Bankruptcy Code specifically excludes Social Security income from a debtor's required payments in a Chapter 13 plan").

Significantly, it was Debtors, and not the Trustee or the bankruptcy court, who determined their net monthly income to be $130. In order to have a feasible plan, Debtors then proposed to make plan payments of $130 per month, but only for so long as necessary to pay unsecured creditors the amount of $1,750 (an amount in excess of the $1,394.06 liquidation analysis amount). As a result, the determinative legal question in this appeal is whether these above-median income Debtors may propose a plan without a minimum term, or whether, as Trustee asserts, § 1325(b)(4)(A)(ii) requires an applicable commitment period of five years, unless the plan provides for payment in full of all allowed unsecured claims over a shorter period.[28]

In 2008, the United States Court of Appeals for the Eighth Circuit ("Eighth Circuit") decided this issue in *In re Frederickson*, under similar facts.[29] Likewise, the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") recently addressed this issue in *Whaley v. Tennyson (In re Tennyson)*.[30] Both Circuits held that the applicable commitment period described in § 1325(b)(4)(A)(ii) is a "temporal concept" requiring above-median income Chapter 13 debtors to commit plan payments for a period of five years

unless the unsecured creditors are paid in full,[31] regardless of the source of income. As explained below, we agree with these Circuit decisions and the analysis therein.

As discussed in both *Frederickson* and *Tennyson*, resolution of the question presented depends on interpretation of two statutory provisions, § 1325(b)(1) and § 1325(b)(4), and their relationship to one another. Section 1325(b)(1) provides as follows:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

>> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

>> (B) the plan provides that all of the debtor's *projected disposable income* to be received in the *applicable commitment period* beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.[32]

Section 1325(b)(4) defines "applicable commitment period":

---

**28.** Interestingly, in their opening brief, Debtors estimated their proposed plan will require approximately 58 months to complete. Appellants' Opening Brief at 4.

**29.** 545 F.3d 652 (8th Cir.2008), *cert. denied*, —— U.S. ——, 129 S.Ct. 1630, 173 L.Ed.2d 997 (2009). In *Frederickson*, an above-median income Chapter 13 debtor with negative disposable income had net monthly income of $600 pursuant to Schedules I and J and proposed a plan with payments of $600 per month for a period of 48 months. *Id.* at 654.

**30.** 611 F.3d 873 (11th Cir.2010) (the Honorable David M. Ebel, United States Circuit

Judge for the Tenth Circuit sat by designation on the panel deciding this case). Again, the facts of *Tennyson* are analogous to the facts presented here since that case also involved an above-median income Chapter 13 debtor with negative disposable income who proposed a plan lasting less than five years without paying unsecured creditors in full.

**31.** Prior to BAPCPA, the minimum duration for all Chapter 13 plans was three years unless unsecured claims were paid in full in a shorter period of time. *See* 11 U.S.C. § 1325(b)(1) (2004).

**32.** 11 U.S.C. § 1325(b)(1) (emphasis added).

(4) For purposes of this subsection [§ 1325(b) ], the *"applicable commitment period"*—

(A) subject to subparagraph (B), shall be—

(i) 3 years; or

(ii) *not less than 5 years,* if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than—

. . .

(II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals;

. . . and

(B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), *but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.*[33]

The issue presented on appeal, as framed by the Eleventh Circuit in *Tennyson,* is "whether an above median income debtor, with negative disposable income, may obtain confirmation of a Chapter 13 bankruptcy plan to last for less than five years when the debtor's unsecured creditors have not been paid in full."[34] As noted by the Eighth Circuit, the statutory rubric works when a debtor's Form 22C disposable income is positive, but breaks down when the disposable income is negative, giving rise to two different interpretations of the applicable statutory provisions.[35]

One interpretation of § 1325(b)(1) and § 1325(b)(4), and the relationship between them, is that

if the debtor does not have any "disposable income," and therefore does not have any "projected disposable income," the debtor's proposed plan can be confirmed regardless of the amount proposed to be paid and the length of the plan because the amount of projected disposable income "to be received in the applicable commitment period" is $0.[36]

This interpretation regards the phrase "applicable commitment period" as only a "multiplier in the § 1325(b)(1)(B) formula, whereby projected disposable income equals disposable income times the 'applicable commitment period.'"[37] An alternative interpretation of these statutory provisions is that "the 'applicable commitment period,' as defined in 11 U.S.C. § 1325(b)(4) and used in 11 U.S.C. § 1325(b)(1)(B), is a temporal requirement that must be met even if the debtor does not have any projected disposable income."[38]

---

33. 11 U.S.C. § 1325(b)(4) (emphasis added).

34. *Tennyson,* 611 F.3d at 874.

35. *Frederickson,* 545 F.3d at 655.

36. *Id.*

37. *Tennyson,* 611 F.3d at 876. As recently expressed by a Colorado bankruptcy court, [w]hile courts or parties applying § 1325(b) often, as a practical matter, multiply projected disposable income by either 36 or 60 to calculate the total amount of money that must be paid into a Chapter 13 plan, such multiplication is a gloss that should not replace the actual language of the statute. Section § 1325(b)(1)(B) does not state that projected disposable income should be multiplied by the number 36 or 60; it states that projected disposable income should be "committed" for a "period," which § 1325(b)(4) defines as either "3 years" or "5 years."
*In re King,* No. 10–18139, 2010 WL 4363173, at *2 (Bankr.D.Colo. Oct.27, 2010).

38. *Frederickson,* 545 F.3d at 655.

The Eighth Circuit opined that "[n]either interpretation fits neatly into the structure of 11 U.S.C. § 1325 and simultaneously complies with the overarching purpose of BAPCPA."[39] However, when confronted with the issue, both the Eighth and Eleventh Circuits adopted the second alternative.

In *Tennyson*, the Eleventh Circuit concluded that "a plain reading of 11 U.S.C. § 1325(b), a recent United States Supreme Court ruling, and the Congressional intent behind BAPCPA mandate that an above median income debtor remain in bankruptcy for a minimum of five years, unless all unsecured creditor's claims are paid in full."[40] Regarding the plain language of the statute, the Eleventh Circuit stated:

> Section 1325(b)(4) clearly says that the "applicable commitment period" shall be five years for an above median income debtor, such as Tennyson. "The word 'shall' is ordinarily the language of command." The use of the word "shall" "normally creates an obligation impervious to judicial discretion." The plain reading of § 1325(b)(4) indicates that an above median income debtor, such as Tennyson, is obligated to form a bankruptcy plan with an "applicable commitment period" of no less than five years, unless his unsecured debts are paid in full.
>
> When the plain reading of a statute produces an unambiguous and reasonable definition of a term, we will not look

past that plain reading and read into the text of the statute an unstated purpose. The text of § 1325(b)(4) is clear, unambiguous, and does not result in any absurd consequences.[41]

On the other hand, in *Frederickson*, the Eighth Circuit found that the interpretations presented by both the debtor and the trustee were "possible interpretations of the text that are supported by authority," noting the differing outcomes from the bankruptcy courts that had examined the issue to date.[42]

Although it found the statutory language to be plain, and thus requiring no further analysis, the Eleventh Circuit also opined that the United States Supreme Court's recent decision in *Hamilton v. Lanning*,[43] supported the conclusion that an above-median income debtor must make plan payments for a minimum of five years.[44] The Eleventh Circuit reasoned that although *Lanning* did not directly address the definition of "applicable commitment period," the Supreme Court indicated that § 1325(b) is not a strict mechanical formula existing in a vacuum.[45] Therefore, it concluded that because *Lanning* allows for a bankruptcy court to accept a final projected disposable income different from, and not the result of, a strict § 1325(b)(1)(B) calculation, the phrase "applicable commitment period" must have an existence independent of the

---

**39.** *Id.* at 656–57. We certainly agree with such a statement and echo Justice Scalias's sentiment in his dissent in the recent Supreme Court case of *Hamilton v. Lanning* that "[i]t may be that no interpretation of § 1325(b)(1)(B) is entirely satisfying." — U.S. —, —, 130 S.Ct. 2464, 2485, 177 L.Ed.2d 23 (2010).

**40.** *Tennyson*, 611 F.3d at 874.

**41.** *Id.* at 877 (citations omitted).

**42.** *Frederickson*, 545 F.3d at 656.

**43.** — U.S. —, 130 S.Ct. 2464, 177 L.Ed.2d 23.

**44.** The Eighth Circuit's decision in *Frederickson* did not comment on *Lanning* because it was issued two years prior to the Supreme Court's *Lanning* decision.

**45.** *Tennyson*, 611 F.3d at 878.

§ 1325(b)(1)(B) calculation.[46]

Further, the Eleventh Circuit stressed that a five year plan minimum, unless unsecured creditors are paid in full, is consistent with Congress' intention in enacting BAPCPA's consumer bankruptcy reforms. The legislative history of BAPCPA indicates: "The heart of the bill's consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ('needs-based bankruptcy relief' or 'means testing'), which is *intended to ensure that debtors repay creditors the maximum they can afford.*"[47] Additionally, the section by section analysis of the legislative history provides as follows:

> Sec. 318. Chapter 13 Plans To Have 5–Year Duration in Certain Cases. Paragraph (1) of section 318 of the Act amends Bankruptcy Code sections 1322(d) and 1325(b) to specify that a chapter 13 plan may not provide for payments over a period that is not [sic] less than five years if the current monthly income of the debtor and the debtor's spouse combined exceeds certain monetary thresholds. If the current monthly income of the debtor and the debtor's spouse fall (sic) below these thresholds, then the duration of the plan may not be longer than three years, unless the court, for cause, approves a longer period of up to five years. The applicable commitment period may be less if the plan provides for payment in full of all allowed unsecured claims over a shorter period.[48]

The Eighth Circuit was likewise persuaded that interpretation of the statutory provision to require a minimum term of five years better comports with the congressional intent behind enactment of BAPCPA's consumer bankruptcy reforms that "debtors repay creditors the maximum they can afford."[49]

A Nevada bankruptcy court's explanation of the connection between a required five year commitment period and congressional intent behind BAPCPA's changes to Chapter 13 is particularly compelling:

> [T]he essence of a chapter 13 case is that the debtor has made an ongoing commitment to provide all disposable income over a period of time to repay creditors. The use of the word "commitment" within "applicable commitment period" exemplifies this congressional goal, implying that the debtor has an ongoing obligation. With an ongoing obligation by the debtor to remain in bankruptcy for the plan term, interested parties can monitor the debtor and capture any increases in the debtor's income during that time. Treating "applicable commitment period" as a multiplicand defeats this purpose by allowing a debtor to use chapter 13, with its expanded discharge, to determine at the outset of the chapter 13 case a set amount owed to creditors. Thus under this view, chapter 13 is simply an alternate form of "lump-sum" payout to creditors, but one in which the debtor is not required to use any prepetition assets and from which he is discharged from several otherwise nondischargeable debts. Under any stretch of the imagination, this court does not believe

---

46.  *Id.*

47.  H.R.Rep. No. 109–31(I), at 2, *reprinted in* 2005 U.S.C.C.A.N. 88, 89 (emphasis added).

48.  H.R.Rep. No. 109–31(I), at 79, *reprinted in* 2005 U.S.C.C.A.N. 88, 146.

49.  *In re Frederickson*, 545 F.3d 652, 657 (8th Cir.2008), *cert. denied,* — U.S. ——, 129 S.Ct. 1630, 173 L.Ed.2d 997 (2009) (internal quotation marks omitted).

that such a result was what Congress intended by enacting BAPCPA.[50]

We must emphasize that the decision of these Debtors to enter the Chapter 13 arena was completely voluntary. Only their bleak financial outlook brought them to the bankruptcy court. The fact that part of their household income is comprised of Social Security income does not allow them to dictate the length of their Chapter 13 plan. This determination is governed by statute.

## V. CONCLUSION

We are persuaded by the Eighth and Eleventh Circuits' decisions in *Frederickson* and *Tennyson,* and conclude as they did, that the applicable commitment period for an above-median income debtor is a minimum of five years, unless all unsecured creditors are paid in full prior thereto, regardless of whether part of his income is comprised of Social Security income. Accordingly, the bankruptcy court's decision that Debtors' required applicable commitment period is five years, and its subsequent order confirming the plan, as amended by Debtors under protest to conform with that requirement, are hereby AFFIRMED.

---

**50.** *In re Slusher,* 359 B.R. 290, 304 (Bankr. D.Nev.2007) (internal citations and footnote omitted).