PREGERSON, Circuit Judge,
dissenting, with whom
KOZINSKI, Chief Judge joins:
The majority overrules our holding in Maney v. Kagenveama that the Chapter 13 “applicable commitment • period” does not mandate a five-year plan length for above median debtors with no projected disposable income. 541 F.3d 868, 876 (9th Cir.2008). The majority’s interpretation of 11 U.S.C. § 1325(b)(1)(B) promotes goals that are at odds with Congress’s purpose when it enacted Chapter 13 to “provide the debtor with a fresh start.” H.R. Rep. No. 95-595, at 117 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6079. The majority also reads language into Chapter 13 bankruptcy law that is not present in the plain text of § 1325(b)(1)(B).
I. Bankruptcy’s Purpose is to Provide Debtors with a Fresh Start
Congress enacted the Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, 92 Stat. 2549 to make “bankruptcy a more effective remedy for the unfortunate consumer debtor.” H.R. Rep. No. 95-595, at 4 (1977). At the time, Congress lamented that “[e]xtensions on, plans, new cases, and newly incurred debts put some debtors under court supervised repayment plans for seven to ten years.” Id. at 117. Congress went on to say that such lengthy repayment plans were “the closest thing there is to indentured servitude.” Id. Congress stated that “bankruptcy relief should be effective, and should provide the debtor with a fresh start.” Id. (emphasis added). Chapter 13 bankruptcy was intended to be helpful to debtors and creditors. Debtors are able to preserve existing assets if they complete a repayment plan under the supervision of a Chapter 13 trustee. Scott Et Al., 8 Collier on Bankruptcy 1300-12 (Lawrence P. King et al. eds., 15th ed. rev.2007). Creditor interests are promoted through recoveries from future income that are not available in Chapter 7 liquidation. Id.
Congress updated the bankruptcy laws for the first time since 1978 with the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23 (2005). At the law’s signing, President George W. Bush reiterated many of the purposes expressed by Congress in 1978:
*863 Our bankruptcy laws are an important part of the safety net of America. They give those who cannot pay their debts a fresh start .... Under the new law, Americans who have the ability to pay will be required to pay back at least a portion of their debts. Those who fall behind their state’s median income will not be required to pay back their debts.... The act of Congress I sign today will protect those who legitimately need help, stop those who try to commit fraud, and bring greater stability and fairness to our financial system.
Press Release, White House Press Office, President Signs Bankruptcy Abuse Prevention, Consumer Protection Act (Apr. 20, 2005), reprinted in 2005 U.S.C.C.A.N. S7, 2005 (emphasis added).
II. The Applicable Commitment Period does not Mandate a Five-Year Chapter 13 Plan for Debtors with no Projected Disposable Income
Unlike the majority, I interpret § 1325 to mean that the applicable commitment period in which debtors are required to distribute projected disposable income to unsecured creditors applies only to debtors with projected disposable income.
Chapter 13 bankruptcy, as enacted in the Bankruptcy Reform Act of 1978, allows a debtor to use future income to pay off debt, while allowing her to keep her assets. See H.R.Rep. No. 95-595 at 118 (1977); see 'also 8 Scott Et Al., supra, at 1300-12. A Chapter 13 debtor is designated “above median” when her annualized' “current monthly income,” 11 U.S.C. § 101(10A), is greater than the yearly “median family income” in her state. 11 U.S.C. § 1325(b)(2)-(3); 11 U.S.C. 101(10A). The Floreses are above median debtors. When an above median Chapter 13 debtor’s monthly expenses are . greater than her monthly income as calculated under 11 U.S.C. § 707(b)(2)(A)-(B), she is deemed to have no projected disposable income. See 11 U.S.C. § 1325(b)(3). Here, it is undisputed that the Floreses’ expenses are greater than their income and that they have no projected disposable income.
A Chapter 13 debtor is solely responsible for filing a proposed payment plan. 11 U.S.C. § 1321. Among the requirements for Chapter 13 plans are: that the plan is proposed and the petition is filed in good faith; that the holders of secured claims approve of the plan; that the debtor will be able to make all payments under and comply with the plan; and that the total payments to be made under the plan are not less than the amount that would be paid if the estate of the debtor were liquidated under Chapter ‘ 7. 11 U.S.C. § 1325(a)(3)-(7). Above median debtors are instructed that “the [Chapter 13] plan [they propose] may not provide for payments over a period that is longer than five years.” 11 U.S.C. § 1322(d)(1).
The Floreses proposed a three-year plan during which they would make monthly payments of $122. The trustee objected to the Floreses’ proposed plan on the ground that the plan should have required payments for five years, rather than three years. The bankruptcy judge increased the monthly payments to $148 and the length of the plan to five years; the monetary increase is not contested on appeal. It is' undisputed that the Floreses’ three-year Chapter 13 plan was proposed in good faith, that the Floreses are able to comply with the plan, and that the Flores-es are paying more than they would be if they liquidated their assets under Chapter 7. It is also undisputed that the Floreses’ three-year Chapter 13 bankruptcy plan was less than five years pursuant to § 1322(d)(1).
If . a trustee or unsecured creditor objects to a -debtor’s Chapter 13 plan, the *864 bankruptcy court may not approve the plan unless “the plan provides that all of the debtor’s projected disposable income to be received in the applicable commitment period ... will be applied to make payments to unsecured creditors under the plan.” 11 U.S.C. § 1325(b)(1)(B). The applicable commitment period is three years for debtors with below median income and five years for debtors with above median income. 11 U.S.C. § 1325(b)(4)(A). Because the Floreses are above median debtors, their corresponding applicable commitment period is five years. The Floreses, however, have no projected disposable income. Thus, the Floreses will contribute no projected disposable income to unsecured creditors over their five year applicable commitment period.
Courts have approachéd the applicable commitment period in several different ways. Some courts, such as the majority here, endorse what is called the temporal approach, where the applicable commitment period is treated as a time requirement for Chapter 13 plan length. This approach has been endorsed by the Sixth, Eighth, and Eleventh Circuits, and district courts in the Fifth, Seventh, and Tenth Circuits. See Baud v. Carroll, 634 F.3d 327 (6th Cir.2011); In re Tennyson, 611 F.3d 873 (11th Cir.2010); In re Frederickson, 545 F.3d 652 (8th Cir.2008); In re Martin, 464 B.R. 798 (C.D.Ill.2012); In re Wing, 435 B.R. 705 (D.Co.2010); In re Meadows, 410 B.R. 242 (N.D.Tx.2009). Other courts have endorsed the monetary approach, where debtors contribute a set amount of money in a time period that may be shorter than the applicable commitment period. This approach has been endorsed by district courts in the Second and Third Circuits. See In re Green, 378 B.R. 30 (N.D.N.Y.2007); In re Vidal, 418 B.R. 135 (M.D.Pa.2009). I continue to endorse the hybrid approach we endorsed in Kagenveama and in the original Flores opinion. Under that approach, “the ‘applicable commitment period’ sets the minimum temporal duration of a plan, but it is inapplicable to a plan submitted ... by a debtor with no ‘projected disposable income.’ ” Danielson v. Flores, 692 F.3d 1021, 1027 (9th Cir.2012).
The Chapter 13 “applicable commitment period” does not explicitly apply to debtors who qualify for Chapter 13 bankruptcy but have no projected disposable income. The majority concludes, however, that the “applicable commitment period” should determine the requisite length of a Chapter 13 plan for all debtors, whether or not they have projected disposable income. The majority disregards the portion of § 1325(b)(1)(B) that ties the “applicable commitment period” to the period of time when projected disposable income is supposed to be distributed to unsecured creditors. Under § 1325(b)(1)(B), the bankruptcy court may not approve the plan unless “the plan provides that all of the debtor’s projected disposable income to be received in the applicable commitment period ... will be applied to make payments to unsecured creditors under the plan.” By doing so, the majority interprets § 1325(b)(1)(B) to say that when a trustee objects to a Chapter 13 plan, the bankruptcy court may not approve the plan unless “the plan provides that all of the debtor’s [Chapter 13 payments ] to be received in the applicable commitment period ... will be applied to make payments to unsecured creditors under the plan.” § 1325(b)(1)(B).
The majority’s reading of § 1325(b)(1)(B) is at odds with the provision’s plain language. A debtor’s payments under a Chapter 13 bankruptcy plan are different than the disposable income a debtor is projected to earn over a period of years. After the Bankruptcy Abuse Prevention and Consumer Protection Act of *865 2005 (BAPCPA), a debtor does not need to have projected disposable income to qualify for, and make payments under, a Chapter 13 bankruptcy plan. See Henry E. Hildebrand II, Impact of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 of Chapter IS Trustees, 79 Am. Banks. L.J. 373, 389 (2005) (“The formula utilized in the means test [to determine projected disposable income] has no relation to the proposed plan and bears no relationship to the amount of money that actually may be available from a debtor for payments to unsecured creditors if a plan is confirmed.”).
Nor is there any indication from Congress that the statutory difference between projected disposable income and Chapter 13 plan payments was an unintended consequence or oversight. See Susan Jensen, A Legislative History of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 79 Alva. Banks. L.J. 485, 567-68 (2005) (explaining that, like the Bankruptcy Reform Act of 1978, the BAPCPA of 2005 was adopted in the absence of economic depression and panic, and is the culmination of nearly ten years of work, involving hundreds of participants) (citation omitted).
The majority concludes that the exception permitting a shorter applicable commitment period under § 1325(b)(4)(B) does not apply to the Floreses. The majority’s conclusion is correct, but the majority’s reasoning is flawed. The majority understands shortening the applicable commitment period to be the same thing as shortening the length of the plan. The exception reads:
[The applicable commitment period] may be less than 3 or 5 years ... only if the plan provides for payment in full of all allowed unsecured over a shorter period.
Id. The majority reasons that the Floreses may not propose a plan with an applicable commitment period that is shorter than five years because the Floreses have not proposed a plan in which their unsecured claims will be paid in full. Under a reading of the plain text of the statute, however, the exception is inapplicable to the Floreses. Because the Floreses have no projected disposable income to distribute to unsecured creditors during the applicable commitment period, there is no applicable commitment period that applies to them. Thus, the § 1325(b)(4)(B) exception has no bearing on the length of the plan the Floreses may propose.
The majority’s concern that only a mandatory minimum plan duration will “allow creditors to receive increased payments from debtors whose earnings happen to increase” is unfounded. Maj. 862. As above median debtors with no projected disposable income, the Floreses are bound by several statutory requirements that are helpful to creditors: that their plan be proposed in good faith; that they are able to comply with the plan and make all payments; and that they pay more in Chapter 13 bankruptcy than they would in Chapter 7 bankruptcy. Moreover, the Floreses’ plan may be modified after the plan is confirmed, but before payments are completed, by the debtor, trustee, or the holder of an allowed unsecured claim. 11 U.S.C. § 1329(a). The plan may be modified to:
(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
(2) extend or reduce the time for such payments;
(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
*866 (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance.
Id. Section 1329(c) reiterates that even though a plan may be extended after it is confirmed, a “court may not approve a [Chapter 13 plan] period that expires after five years.”
There is no statutory language to support the majority’s finding that when Trustee Danielson objected to the Floreses’ proposed plan length of three years, the bankruptcy court was statutorily prohibited from approving a plan shorter than five years in length.
CONCLUSION
Under the majority’s reading of § 1325(b)(1)(B), above median debtors with no projected disposable income will be forced to propose five year plans in contravention of Congress’s purpose when it implemented Chapter 13 to make “bankruptcy a more effective remedy for the unfortunate consumer debtor.” H.R. Rep. No. 95-595, at 5966 (1977). The majority misreads § 1325(b)(1)(B) to require that the bankruptcy court approve a Chapter 13 plan only if all of a debtor’s Chapter 13 payments — rather than projected disposable income — will be received during the applicable commitment period.
After Trustee Danielson objected to the Floreses’ proposed plan, the bankruptcy court was not statutorily precluded from approving the Floreses’ three-year Chapter 13 repayment plan. Therefore, I respectfully dissent.