OPINION
GRABER, Circuit Judge:
In Maney v. Kagenveama (In re Kagenveama), 541 F.3d 868, 875 (9th Cir.2008), we held that 11 U.S.C. § 1325(b)(1)(B) does not impose a minimum duration for a Chapter 13 bankruptcy plan if the debtor has no “projected disposable income,” as defined in the statute. Today, sitting en banc, we overrule that aspect of Kagenvea-ma and hold that the statute permits confirmation only if the length of the proposed plan is at least equal to the applicable commitment period under § 1325(b)(4). Accordingly, we affirm the judgment of the bankruptcy court.
I. Background
Debtors Cesar and Ana Flores filed a petition for relief under Chapter 13 of the Bankruptcy Code. They have unsecured debts. They proposed a plan of reorganization under which they would pay $122 per month (1 %) of allowed, unsecured, nonpriority claims for three years. Chapter 13 Trustee Rod Danielson objected to the plan, arguing, as now relevant, that § 1325(b) requires a minimum duration of five years for persons in Debtors’ circumstances.[1]
The bankruptcy court sustained the Trustee’s objection, holding that Debtors were not entitled to a shorter plan duration because the Supreme Court’s decision in Hamilton v. Lanning, 560 U.S. 505, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010), is clearly irreconcilable with Kagenveama.[2] The bankruptcy court confirmed a plan of five years’ duration, which provided for monthly payments of $148 to unsecured creditors.[3]
Debtors timely appealed to the Bankruptcy Appellate Panel. The bankruptcy court then certified the plan-duration issue for direct appeal to this court pursuant to 28 U.S.C. § 158(d)(2). A divided panel of this court reversed, reasoning that Lanning is not clearly irreconcilable with Kagenveama and that, under Kagenveama, § 1325(b) allows a shorter plan duration for Debtors. Danielson v. Flores (In re Flores), 692 F.3d 1021, 1038 (9th Cir.2012). We then voted to rehear the case en banc. Danielson v. Flores (In re Flores), 704 F.3d 1067 (9th Cir.2012).[4]
II. Analysis
Chapter 13 is a mechanism available to “individuals] with regular income” whose *857 debts are within statutory limits. 11 U.S.C. §§ 101(30), 109(e). Unlike Chapter 7, which requires debtors to liquidate nonexempt assets to pay creditors. Chapter 13 permits debtors to keep those assets if they “agree to a court-approved plan under which they pay creditors out of their future income.” Lanning, 130 S.Ct. at 2468-69 (citing 11 U.S.C. §§ 1306(b), 1321, 1322(a)(1), 1328(a)). A bankruptcy trustee oversees the. filing and execution of the plan. 11 U.S.C. § 1322(a)(1); see. also 28 U.S.C. § 586(a)(3). .
Section 1325 of the Bankruptcy Code sets forth the circumstances in which the bankruptcy court “shall” confirm a debt- or’s proposed repayment plan and those in which it “may not” do so. Under subsection 1325(b)(1), if the trustee or an unsecured creditor objects to a debtor’s proposed plan, the court may not approve the plan unless at least one of two conditions is met. As relevant here, the second of those conditions is that “the .plan provides that all of the debtor’s projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.” 11 U.S.C. § 1325(b)(1)(B) (emphasis added). The statute further provides that the “applicable commitment period” of a plan “shall be” either
(A) subject to subparagraph (B), ... (i) 3 years; or
(ii) not less than 5 years, if the [debt- or’s] current monthly income ..., when multiplied by 12, is not less than [the median annual family income in the applicable state]; and
(B) may be less than 3 or 5 years, whichever is applicable under subpara-graph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.
Id. § 1325(b)(4). The debtor’s “current monthly income” and “disposable income” are calculated according to statutorily defined formulae. See id. § 101(10A) (defining “current monthly income”); id. § 1325(b)(2) (defining “disposable income”); see also Lanning, 130 S.Ct. at 2469, 2471-74, 2478 (holding that courts must calculate “projected disposable income,” which is not statutorily defined, using a “forward-looking” approach (emphasis added)).
It is undisputed that Debtors’ current monthly income is above-median and that subsection 1325(b)(4)(B)’s exception to the five-year applicable commitment period set forth in § 1325(b)(4)(A)(ii) does not apply. Debtors nonetheless contend that their proposed three-year plan was permissible because § 1325(b)(1)(B) does not set forth a minimum plan duration for debtors who, like them, have no projected disposable income.
Courts have interpreted § 1325(b)(l)(B)’s condition for plan confirmation in three distinct ways. See Baud v. Carroll, 634 F.3d 327, 336-38 (6th Cir.2011) (describing split of decisions and collecting cases), cert. denied, — U.S. -, 132 S.Ct. 997, 181 L.Ed.2d 732 (2012). First, a minority of bankruptcy courts view the “applicable commitment period” solely as a monetary “multiplier”; under that “monetary” approach, the number of months in the applicable commitment period is multiplied by the debtor’s projected disposable monthly income to determine the total payments that a debtor must make, but the period has no temporal significance. Id. at 336-38 & n. 7. Second, other bankruptcy courts, as well as this court in Kagenveama, have held that, although the statute does set forth a temporal requirement, that temporal requirement does not apply to debtors whose projected disposable income is less *858 than or equal to $0. Baud, 634 F.3d at 337. Third and finally, a majority of courts have held that a plan cannot be confirmed unless its length is at least as long as the applicable commitment period, without regard to “whether the debtor has positive, zero[,] or negative projected disposable income.” Id. at 336-37. We therefore must consider two issues: (1) whether, under § 1325(b)(1)(B), the applicable commitment period acts as a temporal requirement that defines a plan’s minimum duration; and (2) if it does, whether that requirement applies to debtors who have no projected disposable income.
With respect to the first issue, we hold that the statute defines a temporal, as distinct from a monetary, requirement for confirmation under. § 1325(b)(1)(B). Most importantly, the statute defines the applicable commitment period as having a duration: “3 years,” “not less than 5 years,” or “less than 3 or 5 years,” depending on the debtor’s current monthly income and the plan’s provisions for payments to unsecured creditors. 11 U.S.C. § 1325(b)(4). Furthermore, the requirement of § 1325(b)(1)(B) that the plan provide for payment of the debtor’s disposable income “to be received in the applicable commitment period” suggests an ongoing series of payments for the future duration of that period. A plan cannot provide for the payment of income to be received during a defined period unless it remains in effect during that period.[5]
Three of our sister courts — the Sixth, Eighth, and Eleventh Circuits — are among the courts that have rejected the view that the applicable commitment period is merely a monetary multiplier for determining the amount that the debtor must pay to unsecured creditors. Baud, 634 F.3d at 344; Whaley v. Tennyson (In re Tennyson), 611 F.3d 873, 880 (11th Cir.2010); Coop v. Frederickson (In re Frederickson), 545 F.3d 652, 660 (8th Cir.2008). We join those courts and hold that the applicable commitment period determines the minimum duration that a plan must have to be confirmable under § 1325(b)(1)(B). In doing so, we reaffirm one aspect of the decision in Kagenve ama, in which the panel reasoned that, in general, the applicable commitment period imposes a temporal requirement because the “plain meaning of the word ‘period’ indicates a period of time.” 541 F.3d at 876.
With respect to the second issue, we must decide whether a court may confirm a plan that is shorter than the applicable commitment period defined by § 1325(b)(4) if the debtor has no projected disposable income. In light of the statute’s text, purpose, and legislative history, we now hold that the temporal requirement of § 1325(b) applies regardless of the debtor’s projected disposable income.
In Kagenveama, we held that the § 1325(b)(1)(B) temporal requirement contains an implicit exception because the “ ‘applicable commitment period’ is exclusively linked to § 1325(b)(1)(B) and the *859 ‘projected disposable income’ calculation.” 541 F.3d at'876. Noting that “[njothing in the Bankruptcy Code states that the ‘applicable commitment period’ applies to all Chapter 13 plans,” the panel concluded that “[wjhen there is no ‘projected disposable income,’ there is no ‘applicable commitment period.’ ” Id. at 876, 877. The Sixth and Eleventh Circuits have disagreed and have held that § 1325(b) contains no such exception for debtors with no projected disposable income. See Baud, 634 F.3d at 351 (“[Tjhe temporal requirement of the applicable commitment period applies to debtors facing a confirmation objection even if they have zero or negative projected disposable income.”); Tennyson, 611 F.3d at 880 (“[Tjhe ‘applicable commitment period’ is a temporal term that prescribes the minimum [plan] duration.... The only exception to this minimum period, if unsecured claims are fully repaid, is provided in § 1325(b)(4)(B).”).[6] We now agree with the other circuits’ interpretation.
Our analysis begins with the statute’s text. Miranda v. Anchondo, 684 F.3d 844, 849 (9th Cir.), cert. denied, — U.S. -, 133 S.Ct. 256, 184 L.Ed.2d 137 (2012). Although § 1325(b) is somewhat ambiguous, see Baud, 634 F.3d at 351 (noting that “the plain-language arguments” for and against an exception to § 1325(b)’s temporal requirement “are nearly in equipoise”), that subsection is best read to impose its temporal requirement regardless of the debtor’s projected disposable income. Most significantly, the statute makes neither § 1325(b)(4)’s calculation of the applicable commitment period nor § 1325(b)(l)(B)’s requirement that a plan provide for payments over that period explicitly contingent on a particular level of projected disposable income. Thus, even though a debtor’s payments to unsecured creditors will, at least initially, amount to $0 if the ‘debtor has no projected disposable income, the statute requires the debtor to commit- to the plan for the duration of the applicable commitment period.
Furthermore, “the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.” Gale v. First Franklin Loan Servs., 701 F.3d 1240, 1244 (9th Cir.2012) (internal quotation marks omitted). The structure of Chapter 13 confirms that § 1325(b)(1)(B) establishes a minimum plan duration even if the debtor has no projected disposable income. A debtor’s applicable commitment period is not, as the panel reasoned in Kagenveama, “exclusively linked to § 1325(b)(1)(B) and the ‘projected disposable income’ calculation.” 541 F.3d at 876. Rather, the applicable commitment period is expressly incorporated as a temporal limit for purposes of plan modification under § 1329.
Under § 1329(a), a bankruptcy court may modify a plan at any time after plan confirmation, so long as the modification occurs before the completion of payments under the plan. But a modified plan “may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due.” 11 U.S.C. § 1329(c) (emphasis added). Thus, the statute defines the temporal window within which modified payments under § 1329 may be made by reference to the applicable commitment period. Indeed, the quoted text would make no sense unless the applicable commitment period describes a length of time that can expire or be altered. With respect to plan modifica *860 tion, then, the applicable commitment period serves as a measure of plan duration that is wholly unrelated to the amount of the debtor’s disposable income.
A minimum duration for Chapter 13 plans is crucial to an important purpose of § 1329’s modification process: to ensure that unsecured creditors have a mechanism for seeking increased (that is, nonzero) payments if a debtor’s financial circumstances improve unexpectedly. See Fridley v. Forsythe (In re Fridley), 380 B.R. 538, 543 (B.A.P. 9th Cir.2007) (“Subsequent increases in [a debtor’s] actual income can be captured for creditors by way of a § 1329 plan modification.... ”). The bankruptcy court may modify a plan to “increase ... the amount of payments on claims of a particular class.” 11 U.S.C. § 1329(a)(1). In other words, even if a debtor has no projected disposable income at the time of plan confirmation, and his or her statutorily required payments under § 1325(b)(1)(B) are therefore $0, unsecured creditors may request a later modification of the plan to increase the debtor’s payments if the debtor acquires disposable income during the pendency of the applicable commitment period. Creditors’ opportunity to seek increased payments that correspond to changed circumstances would be undermined by an interpretation of § 1325(b)(1)(B) that relieves debtors from a minimum plan duration merely because they have no projected disposable income at the time of plan confirmation.[7]
Interpreting § 1325(b)(1)(B) to impose a minimum plan duration is also consistent with the prevailing interpretation in our circuit of §§ 1328(a) and 1329(a). Much as § 1329(a) permits modification until “completion of payments under [the] plan,” § 1328(a) entitles the debtor to discharge “after completion by the debtor of all payments under the plan.” In Fridley, the Ninth Circuit Bankruptcy Appellate Panel (“BAP”) considered when a plan is “completed” for purposes of § 1329(a) and § 1328(a). The debtors in that case had not paid all allowed unsecured claims in full, but sought discharge after prepaying the payments that they were required to make under their confirmed plan. Fridley, 380 B.R. at 540. The BAP ruled that the debtors were not entitled to discharge because “prepayment does not ‘complete’ [a] plan for purposes of §§ 1328(a) or 1329.” Id. at 545. Rather, it held, “[t]he ‘applicable commitment period’ in § 1325(b) is a temporal requirement ... [and] the statutory concept of ‘completion’ of payments includes the completion of the requisite period of time.” Id. at 546. The BAP reached that conclusion even though that case, like this one, involved debtors who had no projected disposable income and for whom § 1325(b)(1)(B) accordingly would permit monthly payments of $0 to unsecured creditors. Id. at 540.
Because the text of § 1325(b) is ambiguous, we also look to legislative history in construing its temporal requirement. See Wilson v. Comm’r, 705 F.3d 980, 987-88 (9th Cir.2013) (holding that we may consult legislative history as an aid to the interpretation of ambiguous text). Congress amended § 1325(b), adding the statutory text concerning the “applicable commitment period” that is at issue here, in the Bankruptcy Abuse Prevention and Con *861 sumer Protection Act of 2005 (“BAPC-PA”), Pub.L. No. 109-8, § 318, 119 Stat. 23. The legislative history of BAPCPA supports our interpretation of § 1325(b)(1)(B) as requiring a minimum plan duration:
Chapter 13 Plans To Have a 5-Year Duration in Certain Cases. Paragraph (1) of section 318 of the Act amends Bankruptcy Code sections 1322(d) and 1325(b) to specify that a chapter 13 plan may not provide for payments over a period that is not less than five years if the current monthly income of the debtor and the debtor’s spouse combined exceeds certain monetary thresholds. If the current monthly income of the debtor and the debtor’s spouse fall below these thresholds, then the duration of the plan may not be longer than three years, unless the court, for cause, approves a longer period up to five years. The applicable commitment period may be less if the plan provides for payment in full of all allowed unsecured claims over a shorter period. Section 318(2), (3), and (4) make conforming amendments to sections 1325(b) and 1329(c) of the Bankruptcy Code.
H.R.Rep. No. 109-31(1), § 318, at 79 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 146 (boldface type added). Although the quoted section of the House Report is confusingly worded, its title suggests that above-median debtors are to be held to a five-year minimum plan duration without regard to their expenses or disposable income, unless they pay unsecured claims in full over a shorter period.
Finally, our interpretation of § 1325(b)(1)(B) is consistent with the policies that underlie the Bankruptcy Code and the BAPCPA amendments. “The principal purpose of the Bankruptcy Code is to grant a ‘fresh start’ to the ‘honest but unfortunate debtor.’ ” Marrama v. Citizens Bank, 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) (quoting Grogan v. Garner, 498 U.S. 279, 286, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). But that generality is not the end of the story. We have recognized that bankruptcy also serves the “often conflicting” policy of promoting creditors’ interest in repayment. Dumont v. Ford Motor Credit Co. (In re Dumont), 581 F.3d 1104, 1111 (9th Cir.2009); see also Ransom v. FIA Card Servs., N.A., — U.S. -, 131 S.Ct. 716, 729, 178 L.Ed.2d 603 (2011) (describing “BAPCPA’s core purpose [as] ensuring that debtors devote their full disposable income to repaying creditors”). The imposition of a, minimum duration is consistent with both of those policies: By ensuring the availability of plan modification over the applicable commitment period, even when the debtor cannot make any payments at the outset, our reading permits Chapter 13 to operate as a mechanism for repayment over time by wage earners, in accordance with their actual ability to pay. See generally 8 Collier on Bankruptcy ¶ 1300.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.2012).
In Banning, the Supreme Court relied in part on similar considerations in rejecting an interpretation of § 1325(b) that would require courts to calculate projected disposable income using a “mechanical approach” that depends only on a debtor’s current monthly income during the six-month period preceding the bankruptcy filing date. 130 S.Ct. at 2469-70. The Court favored a “forward-looking” approach that takes into account known- or nearly certain information about changes in a debtor’s earning power during the plan period. Id. at 2475. The policy justification for looking to future earnings is that a failure to do so “would deny creditors payments that the debtor could easily make.” Id. at 2476. In other words, the *862 statute is meant to allow creditors to receive increased payments from debtors whose earnings happen to increase. Lan-ning involved pre-confirmation adjustments to plan payments, “to account for known or virtually certain changes” in a debtor’s income. Id. at 2475. But the same logic persuades us that Congress intended § 1325(b)(1)(B) to ensure a plan duration that gives meaning to § 1329’s modification procedure as a mechanism for posi-confirmation adjustments for unforeseen increases in a debtor’s income. That mechanism will achieve its purpose most effectively if the Chapter 13 plan has a minimum duration within which modification is possible. Accordingly, the policy that underlies Lanning also supports our reading of § 1325(b)(1)(B).
III. Conclusion
In summary, we hold that a bankruptcy court may confirm a Chapter 13 plan under 11 U.S.C. § 1325(b)(1)(B) only if the plan’s duration is at least as long as the applicable commitment period provided by § 1325(b)(4). Accordingly, we overrule Kagenveama’s holding regarding the meaning of “applicable commitment period” and affirm the bankruptcy court’s ruling.
The mandate shall issue forthwith.
AFFIRMED.

. The Trustee has never questioned Debtors' good faith in proposing the plan. See 11 U.S.C. § 1325(a)(3) (setting forth requirement of the debtors’ good faith).

. See Miller v. Gammie, 335 F.3d 889, 900 (9th Cir.2003) (en banc) (holding that a three judge panel is not bound by prior circuit precedent if an intervening decision of a higher authority "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable”).

. Debtors do not dispute the increase from $122 to $148 per month.

. We review de novo issues of statutory construction, including a bankruptcy court's interpretation of the Bankruptcy Code. Samson v. W. Capital Partners, LLC (In re Blixseth), 684 F.3d 865, 869 (9th Cir.2012) (per cu-riam).

. Our interpretation of § 1325(b)(1)(B) does not render that provision redundant with § 1322(d), which sets forth the maximum periods of time for a Chapter 13 bankruptcy, because § 1325(b)(1)(B) concerns the plan’s minimum duration. Although both the maximum and the minimum will be five years for many debtors whose income, like that of the debtors in this case, is above-median, 11 U.S.C. §§ 1322(d)(1), 1325(b)(4)(A)(ii), a range of permissible plan durations remain possible if a proposed plan to repay all allowed unsecured creditors’ claims in full warrants a shorter applicable commitment period under § 1325(b)(4)(B). Furthermore, § 1325(b) is triggered only if the trustee or a creditor objects, whereas § 1322(d) applies in all cases, a distinction that suggests that Congress intended the two sections to serve different functions.

. In Frederidcson, the Eighth Circuit expressly declined to decide whether such an exception to § 1325(b)’s temporal requirement exists when a debtor's projected disposable income is either zero or negative. 545 F.3d at 660 n. 6.

. This conclusion is bolstered by the sections of the Code that allow creditors to monitor a debtor’s financial situation during the bankruptcy. For instance, Chapter 13 debtors, upon request, must provide post-petition reports of the amount and sources of their income, see 11 U.S.C. § 521(f)-(g), and the "obvious purpose of this self-reporting obligation is to provide information needed by a [creditor] to decide whether to propose hostile § 1329 plan modifications,” Fridley, 380 B.R. at 544. The purpose of these monitoring provisions would be undermined if each plan did not have a minimum duration.