IN RE: Phillip E. MAST, Victoriarose K. Mast, Debtors.

BANKRUPTCY NO: 11–02982–MM13

United States Bankruptcy Court, S.D. California.

DATE: October 27, 2015, TIME: 10:00 a.m., CRTRM: 1

Signed November 17, 2015

Thomas K. Shanner, Shanner & Associates, San Diego, CA, for Debtors.

MEMORANDUM DECISION AND ORDER GRANTING TRUSTEE'S MOTION TO ENFORCE THE TERMS OF THE CONFIRMED PLAN

MARGARET M. MANN, JUDGE, United States Bankruptcy Court

Before the Court is a motion brought by Chapter 13 Trustee David L. Skelton ("Trustee") entitled "Motion to Enforce the Terms of the Confirmed Plan" ("Motion"), by which Trustee seeks to increase the plan length and the dividend to unsecured creditors under the confirmed Chapter 13 plan ("Plan") of Debtors PHILLIP E. and VICTORIA ROSE K. MAST. Debtors oppose the Motion claiming it is an invalid attempt to modify the Plan, which they have fully performed by paying creditors the full 74% promised return.

To rule on the Motion, the Court must interpret the recently decided and controlling authority of *Danielson v. Flores (In re Flores)*, 735 F.3d 855 (9th Cir.2013), in the context of the Southern District of California Bankruptcy Court's form Chapter 13 plan used by Debtors in this case. This form plan, although it is recommended rather than required, has been widely used in this Court for many years. Because many similar motions have come before the Court in recent months, the Court writes this decision to set forth its analysis that the proper characterization of the Motion is one to enforce the Plan rather than to amend it, and that only as so characterized, can the Motion be granted.

## I. *FACTS*

The facts here are not disputed.

Nearly four years ago Debtors confirmed the Plan, as amended, on February 23, 2012. Their income at the time was above the median established for this geographic area. The Plan in paragraph 13 provides for distributions to unsecured, non-priority creditors of "74% or a pro-rata share" of an uncompleted blank space in the form; *i.e.*, zero. The Plan's prescribed distribution of 74% has been paid early, after only 55 months of payments. When the early payoff became apparent, Trustee brought his Motion seeking to increase the dividend paid to unsecured creditors to 100%, and extend the Plan length to 60 months, while maintaining the current monthly plan payment of $1,340. He does not assert this was due to Debtors' changed financial circumstances.

## II. *CONTENTIONS OF PARTIES*

Trustee claims the Motion must be granted under *Flores*, 735 F.3d at 858, because Debtors were above median debtors at the outset of the case and must make payments for the full 60–month applicable commitment period ("ACP"). Although not claimed in his initial Motion, Trustee later asserted that modification of the percentage payment is required by the Plan under paragraph 13. He further argues paragraph 13 should be given res judicata, or preclusive, effect.

Debtors claim the Motion is a disguised modification of the Plan that does not meet the standards under 11 U.S.C. § 1329[1] because no changed circumstances apply. Debtors also contend they completed the payments under the Plan by making the specified 74% payout and that changing the length of the Plan would be an impermissible modification.

## III. *ANALYSIS*

A. Effect of *Flores*

*Flores*, 735 F.3d at 558, held that the ACP is a temporal requirement determined at the inception of the case because

---

1. All statutory references are to Title 11 of the United States Code unless otherwise stated.

Congress intended the ACP requirement contained in § 1325(b)(1)(B) to ensure a plan duration that gave meaning to § 1329's modification procedure. The Ninth Circuit reasoned that mandating plan payments over the entire ACP provides a mechanism for post-confirmation adjustments for unforeseen changes in a debtor's income. *Id.* (citing *Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538, 540 (9th Cir. BAP 2007) (debtors could not confirm a plan that accelerates plan payments to shorten the plan length to 14 months and avoid the application of the ACP because the ACP is a temporal requirement)). However, as noted above, there are no changed circumstances to consider in this case.

The import of *Flores, id.,* is that the ACP, as established by the means test, is set in stone as calculated when the case is filed. *See In re Moglia*, 2014 WL 7405443, at *2–3, 2014 Bankr LEXIS 5197, *6–7 (Bankr.D.Or. Dec. 30, 2014) (ACP is not a "moving target"); *In re Pasley*, 507 B.R. 312, 320–21 (Bankr.E.D.Cal.2014) (citing *Villanueva v. Dowell (In re Villanueva )*, 274 B.R. 836 (9th Cir. BAP 2002)) (debtors could amend their plan to reduce the plan length from 44 to 36 months because 36 months was the initial ACP at the time the case was filed).

While *Flores,* 735 F.3d at 558, required that the Plan contain a 60–month length, the Court must enforce the Plan here as written unless it can be properly modified. Chapter 13 plans such as Debtors' Plan, are binding on the parties under § 1327 and entitled to preclusive effect, even if they contain terms contrary to law. *United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 278–279, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010). The sole exception to the bar of preclusion is where the plan may be modified in accordance with § 1329. *See, e.g., DeHart v. Eckert (In re Eckert),* 485 B.R. 77, 83 (Bankr. M.D.Pa.2013) (absent a proper amendment the original plan as confirmed would remain binding under § 1327).

## B. Trustee Cannot Modify the Plan to Increase the Length and Percentage Return

The Court must thus address whether the Plan can be modified to increase the return and length in a manner consistent with the statute. Four enumerated subsections of § 1329(a) permit only certain types of plan modifications: (1) changing the monthly payments; (2) changing the plan length; (3) changing the distribution to creditors who receive a payment outside of the plan; and (4) reducing the plan payments to enable a debtor to buy health insurance. A change in the percentage return as sought by Trustee is not a permissible modification under § 1329(a)(3) unless the change is made to accommodate payments made to a particular creditor outside the plan. There were no such payments made, and a change in the return is thus not a permissible modification.

Unlike the proposed percentage modification, a change in plan length is a permissible type of modification under § 1329(a)(1), but only if it the length change modification meets the statutory standards. Timing of a proposed plan modification is critical. A plan may not be modified after payments are completed under § 1329(a). *See Schlegel v. Billingslea (In re Schlegel),* 526 B.R. 333, 342 (9th Cir. BAP 2015). Other modification standards are prescribed under § 1329(a)(b)(1), which incorporates the plan confirmation tests of §§ 1322(a) and (b), 1323(c), and 1325(a). Notably absent in these statutory requirements is § 1325(b), which requires that unsecured creditors receive Debtors' projected disposable income for the length

of the ACP, which under *Flores,* 735 F.3d at 558, is set at the heart of the case. *Flores, id.,* is thus inapplicable to the consideration of modified plans, since the standards for approval of modified plans contained in § 1329(b) do not require compliance with § 1325(b). As such, later changes in Chapter 13 debtors' circumstances do not require a recalculation of the ACP in order for a modified plan to be approved. *Sunahara v. Burchard (In re Sunahara),* 326 B.R. 768, 781 (9th Cir. BAP 2005). While the Court may, in its discretion, consider a change in circumstances before modifying a Chapter 13 plan, that factor is not required by statute and is not determinative. *Mattson v. Howe (In re Mattson),* 468 B.R. 361, 365 (9th Cir. BAP 2012). Preclusion principles are also inapplicable in the plan modification context because § 1329 anticipates a lack of finality by permitting certain types of modifications for a plan. *Powers v. Savage (In re Powers),* 202 B.R. 618, 622 (9th Cir. BAP 1996).

 As applied here, the Motion cannot be granted if considered as one seeking Plan modification. Not only is the percentage return not a permissible type of modification under the statute, but a change in plan length does not meet the modification standards. Here, because the percentage return has been paid in 55 months, it is too late to modify the Plan to fix this deficiency under *Schlegel,* 526 B.R. at 342, because payments have been completed.

This leaves Trustee's argument that the Plan always required a 60 month ACP with a 100% return as the only viable basis for granting the Motion.

## C. *Interpretation of Plan*

 To assess this remaining argument, the Court is required to analyze the Plan language; an analysis conducted in accordance with contract principles. A bankruptcy plan is "essentially a contract between a debtor and his/her creditors." *Miller v. United States,* 363 F.3d 999, 1004 (9th Cir.2004). As such, it must "be interpreted according to the rules governing the interpretation of contracts," and a plan that is "ambiguous as to a material term" is "subject to interpretation by a reviewing court." *Id.; see also One West Bank FSB v. Arizmendi (In re Arizmendi),* No. 09–19263–PB13, 2011 WL 2533074, at *7, 2011 Bankr.LEXIS 2138, at *20–21 (Bankr. S.D.Cal. May 26, 2011) (Taylor, Chief Judge) (interpreting paragraph 9 of the form chapter 13 plan against the debtor to require her to pay monthly payments under a note rather than a modified HAMP payment). When interpreting the language of a reorganization plan, the law of the state in which the plan was confirmed governs its interpretation. *Captain Blythers, Inc. v. Thompson (In re Captain Blythers, Inc.),* 311 B.R. 530, 536 (9th Cir. BAP 2004) (citations omitted). Under California law, a contract term is ambiguous if it is "capable of more than one reasonable interpretation." *Miller,* 363 F.3d at 1004 (quoting *Badie v. Bank of Am.,* 67 Cal. App.4th 779, 79 Cal.Rptr.2d 273, 286 (Ct. App.1998)). Contracts must be read as a whole, giving effect to every part, and, if practicable, allowing each clause to help interpret the other. Cal. Civ. Code § 1641; *see also Captain Blythers, Inc.,* 311 B.R. at 536 (citing *In re Affordable Housing Dev. Corp.,* 175 B.R. 324, 329–30 (9th Cir. BAP 1994) (under California law, "one phrase of a contract should not be interpreted so as to render another phrase of the contract meaningless")).

 The Plan provided in paragraph 13 that unsecured nonpriority creditors would receive:

**74% or a pro-rata share of $\_\_\_, whichever is greater.** (The dollar

amount is the greater of (1) the non-exempt assets or (2) the applicable commitment period of 36 or 60 months multiplied by debtor's projected disposable income). If the percentage is left blank, trustee will pay the dollar amount to unsecured creditors. If the percentage is filled in at less than 100%, trustee is authorized to increase the percentage if necessary to comply with the required applicable commitment calculation.

(emphasis in original). The Plan fails to define the applicable ACP or provide a specific plan length. In contrast, the Plan does specify very clearly that only a 74% return to unsecured nonpriority creditors is required, and this was accomplished in 55 months. These plan terms create a potential ambiguity because, superficially, it appears the Plan was completed in 55 months. However, reading the Plan as a whole, the Court must also consider that the Plan expressly contemplated adjustments to the payment percentage if the percentage amount were to be listed at zero, as is the case here.

Under a holistic consideration of the Plan language, the Trustee's Motion does not so much increase the percentage payout or change the Plan length as it "adjusts" the payout to comply with the ACP. Interpreting the provision requiring a 74% return to unsecured nonpriority creditors in a way that gives effect to the whole of paragraph 13, the quoted language from paragraph 13 of the Plan supports an interpretation of the Plan requiring it run for 60 months. *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1265, 10 Cal. Rptr.2d 538, 833 P.2d 545 (Cal.1992). As additional support for this interpretation, the adjustment approach to interpretation of Plan ensures it is consistent with the authority of *Flores*, 735 F.3d at 858, and thus interprets it in a manner consistent with controlling law. *See* Cal. Civ. Code § 1643 (contracts must be interpreted to

be "lawful, operative, definite, reasonable, and capable of being carried into effect").

## IV. *CONCLUSION*

The Court finds that *Flores*, 735 F.3d at 858, is not controlling here, and serves only as an interpretive guide for the Plan. The Court also agrees with Debtor that the Plan is not subject to being modified. The Plan as written, however, must be interpreted to provide for a 60 month plan length and a 100% return, and the Motion will be granted on this ground only. As such, the Motion need not meet the requirements of either § 1329 nor Fed. R. Bankr. P. 3015. No plan amendment is necessary, and Trustee's Motion is granted.