

FILED

APR 27 2022

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ORANGE COUNTY BAIL BONDS, INC.,<br>Debtor. | BAP No. CC-21-1086-GTL<br>CC-21-1126-GTL<br>(Related Appeals) |
| LEGAL SERVICE BUREAU, INC., dba<br>Global Fugitive Recovery,<br>Appellant,<br>v.<br>ORANGE COUNTY BAIL BONDS, INC.,<br>Appellee. | Bk. No. 8:19-bk-12411-ES<br><br>**OPINION** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Erithe A. Smith, Bankruptcy Judge, Presiding

APPEARANCES:

D. Edward Hays of Marshack Hays LLP argued for appellant; Marc C. Forsythe of Goe Forsythe & Hodges LLP argued for appellee.

Before: GAN, TAYLOR, and LAFFERTY, Bankruptcy Judges.

GAN, Bankruptcy Judge:

## INTRODUCTION

In these related appeals, we consider whether the bankruptcy court abused its discretion by confirming the chapter 11[1] plan of debtor Orange County Bail Bonds, Inc. ("Debtor") and by denying a motion to convert or dismiss filed by creditor Legal Service Bureau, Inc., dba Global Fugitive Recovery ("Global"). We find no abuse of discretion and AFFIRM both orders. We publish to explain the unique role of the bankruptcy court, in a case under subchapter V, to set the commitment period in which a debtor must pay its projected disposable income or its value.

## FACTS[2]

### A.    Prepetition Events

Debtor is a small bail bond company that has operated primarily in Orange County, California since 1997. Global is a bail fugitive recovery business that contracts with bail bond companies to capture and arrest fugitives who forfeit bail and flee.

In 2014, Debtor entered into a surety bail bond agreement with Parwin Saddozai and Imron Saddozai as bail bond agent for their imprisoned son Shikeb Saddozai (the "Defendant"). As security for the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We exercise our discretion to take judicial notice of documents electronically filed in Debtor's bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

bond, Ms. Saddozai provided a deed of trust on her residence (the "Saddozai Property"). Defendant failed to appear at his hearing, and Debtor retained Global, which located Defendant in the Philippines and, in collaboration with the U.S. Marshals Service, returned Defendant to the United States in May 2015.

Global invoiced Debtor $300,000 and Debtor in turn invoiced Ms. Saddozai $326,412.29 for Global's fee, legal fees, and a past due balance on the bond premium. Debtor advised Ms. Saddozai that it would initiate foreclosure proceedings within 30 days if she did not pay the amount due.

Ms. Saddozai disputed the obligation and filed suit in California Superior Court seeking a release of the deed of trust. The state court stayed the pending foreclosure and later consolidated the case with a separate suit filed by Global against Debtor.

In 2018, the state court entered judgment in favor of Global, and against Debtor, in the amount of $327,750,[3] and it entered judgment in favor of Debtor, and against Ms. Saddozai, in the amount of $326,000. The state court denied Ms. Saddozai's request for a permanent injunction to prevent foreclosure.

Debtor appealed the judgment, and Ms. Saddozai cross-appealed. Ms. Saddozai was subsequently dismissed from the appeal, and she filed a chapter 13 bankruptcy petition, staying Debtor's ability to foreclose.

---

[3] The court later awarded Global $185,381.08 for prejudgment interest and attorney's fees.

Global then filed suit against Debtor's principals, Leslie Anne Miller and Robert Miller, seeking to establish alter ego liability for the judgment, and in June 2019, Debtor filed a chapter 11 petition.

## B. The Bankruptcy, Amended Petition, And Motion To Convert Or Dismiss

Debtor's principal asset consisted of its judgment against Ms. Saddozai and its deed of trust on the Saddozai Property, which it valued at $550,000. Debtor's claims consisted primarily of Global's unsecured claim in the amount of $542,506.03 and unsecured insider claims totaling $721,926.90.[4]

Debtor filed its chapter 11 plan and disclosure statement in December 2019. Prior to the final hearing on approval of the disclosure statement, Debtor filed an amended petition, electing to proceed as a small business debtor under subchapter V.[5]

In response, Global filed a motion to convert or dismiss the case and objected to Debtor's amended petition ("Dismissal Motion"). Global argued that the case was filed in bad faith as a litigation tactic to forestall Global's collection efforts and to gain a litigation advantage in the state

---

[4] Debtor also scheduled a claim of in favor of its surety for $7,831,800, but that claim was later disallowed by the court. In addition to Global's claim, Debtor had allowed non-insider claims of approximately $35,000.

[5] The Small Business Reorganization Act, commonly referred to as "subchapter V," was enacted in August 2019 and became effective on February 19, 2020. *See* 11 U.S.C. §§ 1181, *et seq*. Small Business Reorganization Act of 2019 (HR 3311), Pub. L. No. 116-54, 133 Stat. 1079 (Aug. 23, 2019).

court appeal and the alter ego suit against Debtor's principals. Global claimed the case was essentially a two-party dispute because it held approximately 95% of Debtor's non-insider debt, and it further asserted there was cause to dismiss or convert based on Debtor's continuing loss and inability to reorganize. It noted that during the case Debtor operated at a loss while accruing substantial administrative claims.

Global argued that Debtor's revenue would be insufficient to fund a plan of reorganization because California had recently enacted bail reform legislation ("SB10") which threatened to severely impact the bail bond industry. It maintained that although SB10 was stayed by a pending referendum, voters were not likely to repeal the law, and it would be implemented after the November 2020 referendum. Finally, Global objected to the amended petition and argued that allowing Debtor to change course several months into the case would create a procedural quagmire and would constitute cause to dismiss or convert because statutory deadlines under subchapter V had already passed.[6]

Debtor opposed the Dismissal Motion and argued that the case was filed in good faith to preserve an ongoing business and to pursue the estate's largest asset, the Saddozai judgment. Debtor rejected the notion that its election to proceed under subchapter V established cause to convert or dismiss because the deadlines could be extended by the court. Debtor

---

[6] Section 1189 requires a debtor under subchapter V to file a plan "not later than 90 days after the order for relief" and § 1188 requires the court to conduct a status

5

also argued that there was a reasonable likelihood of rehabilitation based on its expected recovery from the Saddozai Property and the possibility of increased revenue if SB10 were repealed by the referendum.

While the Dismissal Motion was pending, the bankruptcy court held the initial subchapter V status conference and set deadlines for Debtor to file an amended plan and disclosure statement. The court continued the status conference and set a hearing for July 16, 2020, on approval of Debtor's amended disclosure statement.

Prior to the hearing on the Dismissal Motion, the bankruptcy court issued a tentative decision stating its intent to continue the hearing to July 2020 to allow the court to consider the motion in the context of an amended plan and disclosure statement and to hear from subchapter V trustee Mark M. Sharf ("Trustee") about the prospects for reorganization. The parties did not oppose the tentative decision, and the court continued the hearing to July 16, 2020.

At that hearing, Debtor, Global, and Trustee agreed that Debtor's ability to reorganize depended on the outcome of the referendum and recovery from the Saddozai Property. The bankruptcy court continued the hearing on the Dismissal Motion and on Debtor's disclosure statement to November 19, 2020, and it stated that if the results of the November 3, 2020 referendum proved unfavorable to Debtor, it would likely dismiss or convert the case.

conference "not later than 60 days after the entry of the order for relief."

6

In November 2020, California voters repealed SB10 through the referendum. Debtor then filed a request to extend the deadline to file its amended disclosure statement and to continue the November hearing to December 17, 2020, which the court granted.

Prior to the December 2020 hearing, the bankruptcy court issued a tentative decision stating its intent to deny the Dismissal Motion. The bankruptcy court indicated that Global had not satisfied its burden to demonstrate Debtor's bad faith. At the hearing, Global argued that, rather than deny the Dismissal Motion, the court should continue the matter to the date set for confirmation. The bankruptcy court set a confirmation hearing for March 4, 2021, and it continued the hearing on the Dismissal Motion to coincide with confirmation.

C.    **Debtor's Amended Plans And The Court's Orders**

On January 5, 2021, Debtor filed a Second Amended Disclosure Statement and Plan ("SAP"). Debtor proposed to pay allowed claims from the proceeds of the Saddozai Property and from Debtor's future earnings. Debtor stated that it foreclosed on the Saddozai Property in August 2020 and had obtained a buyer at $900,000. The bankruptcy court subsequently approved the sale, resulting in net proceeds to the estate of $432,972.95 (the "Saddozai Proceeds").

In the SAP, Debtor separately classified Global's unsecured claim, and proposed to pay it $100,000 from the Saddozai Proceeds and the remainder from actual disposable income produced up to five years post-

7

confirmation. Debtor projected it would have total disposable income of $287,047.83 for a three-year period following confirmation and $493,052.47 for a five-year period. However, Debtor stated that because it was proposing to pay only the actual disposable income it received, it was possible that Global could receive nothing from future earnings or that it could be paid in full.

Global objected to the SAP, arguing that it was not fair and equitable because Debtor's projections were unsubstantiated and Debtor operated at a loss throughout the bankruptcy. It also objected that the SAP was not feasible and not proposed in good faith.

Trustee objected and argued that pursuant to § 1191(c)(2) Debtor must commit at least three years of projected disposable income. After negotiating with Debtor, Trustee filed an Amended Statement of Position, informing the court that Debtor would amend its plan to provide that it would not receive a discharge unless: (1) it paid all actual disposable income over a five-year period following confirmation; and (2) it paid Global a minimum of $181,000 from actual disposable income, in addition to the proposed payment from the Saddozai Proceeds. Prior to the hearing, Debtor filed its Third Amended Plan (the "Plan") to address Trustee's concerns.

At the March 4, 2021 hearing, the bankruptcy court determined that the Plan, as amended and with modifications agreed to at the hearing,

satisfied the confirmation requirements of §§ 1129 and 1191, and the Dismissal Motion would be denied.

In April 2021, the bankruptcy court entered an order confirming the Plan. The court held that Debtor's payment of actual disposable income, in an amount not less than $181,000, would satisfy § 1191(c)(2)(A). The confirmation order further required Debtor to pay Global, on the effective date, $127,794.35 from the Saddozai Proceeds. The court entered a separate order denying the Dismissal Motion, and Global timely appealed both orders.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (L). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court abuse its discretion by confirming the Debtor's Plan?

Did the bankruptcy court abuse its discretion by denying the Dismissal Motion?

## STANDARDS OF REVIEW

We review the bankruptcy court's decision to confirm a chapter 11 plan for abuse of discretion. *Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1045 (9th Cir. 2013). We also review the bankruptcy court's denial of a motion to dismiss or convert for abuse of discretion. *Id.* at 1049.

A bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

We review the bankruptcy court's factual findings regarding whether a plan satisfies confirmation requirements for clear error. *See Comput. Task Grp., Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 184 (9th Cir. BAP 2003). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

## DISCUSSION

### A.  The Bankruptcy Court Did Not Abuse Its Discretion By Confirming Debtor's Chapter 11 Plan.

Because Global did not accept the Plan, the bankruptcy court considered confirmation under the "cramdown" provision of § 1191(b). Pursuant to § 1191(b), the bankruptcy court can confirm a nonconsensual subchapter V plan if it satisfies all requirements of § 1129(a), other than (a)(8), (10), and (15), and the bankruptcy court determines that the plan "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."

Global argues that the bankruptcy court erred by confirming Debtor's plan because it was not "fair and equitable" under § 1191, it lacked good faith as required by § 1129(a)(3), and it was not feasible under § 1129(a)(11).

**1.    The Plan Is Fair And Equitable To Global.**

Whether a chapter 11 plan is "fair and equitable" is a factual determination that we review for clear error. *First S. Nat'l Bank v. Sunnyslope Hous. Ltd. P'ship (In re Sunnyslope Hous. Ltd. P'ship)*, 859 F.3d 637, 646 (9th Cir. 2017) (en banc), *as amended* (June 23, 2017) (citing *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352, 1358 (9th Cir. 1986)).

Section 1191(c)(2) defines the fair and equitable requirement under subchapter V to include:

> (A) the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix . . . will be applied to make payments under the plan; or
>
> (B) the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix . . . is not less than the projected disposable income of the debtor.

11 U.S.C. § 1191(c)(2)(A)-(B). In other words, a plan must commit the debtor's projected disposable income or pledge other payments having a present value of at least that amount.

The Plan does not provide for payment of Debtor's projected disposable income. Instead, it provides for an effective date payment of

11

$432,972.95 and possible payment of an unknown amount from Debtor's actual disposable income. The Plan does not satisfy § 1191(c)(2)(A).

However, Debtor argues that we should affirm the court's decision because the record is clear that the Plan satisfies § 1191(c)(2)(B). Debtor maintains that the effective date payment of $432,972.95 plus $181,000—which must be paid to obtain a discharge—is greater than its projected disposable income for a five-year period. This argument is insufficient for two reasons. First, although the Plan makes discharge contingent on payments totaling $181,000, it does not commit to pay any specific amount. Second, neither the timing nor the actual amount of any future payment is defined in the Plan; consequently, the effective-date value of such payments cannot be determined.

But we agree that the Plan satisfies § 1191(c)(2)(B) because the effective date payment is greater than Debtor's projected disposable income for the minimum three-year period required by § 1191(c)(2).

Congress enacted subchapter V as an "expedited process for small business debtors to reorganize quickly, inexpensively, and efficiently . . ." *In re Seven Stars on the Hudson Corp.*, 618 B.R. 333, 336 (Bankr. S.D. Fla. 2020); *see also In re Progressive Sols., Inc.*, 615 B.R. 894, 900 (Bankr. C.D. Cal. 2020) ("[T]he primary purpose of [subchapter V] is to promote successful reorganizations using the tools that are now available under current law.").

As part of the streamlined, flexible process under subchapter V, the Bankruptcy Code sets a baseline requirement that a debtor commit three

12

years of projected disposable income, while it also affords the bankruptcy court discretion to require more as a condition of finding a plan fair and equitable.

The court's role in setting a longer commitment period is unique to subchapter V. Under chapter 13, the "applicable commitment period" is set by statute. 11 U.S.C. § 1325(b)(4); *see Danielson v. Flores (In re Flores)*, 735 F.3d 855, 858 (9th Cir. 2013) (en banc). Chapter 12 sets a three-year commitment period but permits a debtor to extend the period, up to five years, upon a showing of cause. 11 U.S.C. §§ 1225(b)(1)(B); § 1222(c). Section 1191 does not prescribe a standard by which a bankruptcy court should fix a longer period. By giving the bankruptcy court the sole authority to require a longer commitment period in appropriate cases, subchapter V ensures an efficient confirmation process for small business debtors.

Here, the record does not indicate that the bankruptcy court set a longer commitment period for purposes of § 1191(c)(2). To satisfy the minimum requirement of § 1191(c)(2)(B), the Plan must provide for payments in the three-year period following the effective date, having a present value of not less than $287,047.83.[7]

---

[7] Section 1191(c)(2)(B) does not define the "projected disposable income" which must be exceeded by the present value of plan payments. *Compare* § 1191(c)(2)(B) (requiring plan payments to have a present value not less than "the debtor's projected disposable income") *with* § 1225(b)(1)(B) (requiring plan payments to have a present value not less than "the debtor's projected disposable income **for such period**")

Because the Plan provides for distribution of the Saddozai Proceeds on the effective date in the amount of $432,972.95, it satisfies § 1191(c)(2)(B), and the bankruptcy court did not clearly err in finding that the Plan is fair and equitable to Global. Although the confirmation order referenced § 1191(c)(2)(A), any such error was harmless. *See Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 355 (9th Cir. BAP 2012) ("Generally speaking, we ignore harmless error."); Fed. R. Civ. P. 61, made applicable by Fed. R. Bankr. P. 9005. And we may affirm on any ground fairly supported by the record. *Wirum v. Warren (In re Warren)*, 568 F.3d 1113, 1116 (9th Cir. 2009).

### 2. The Plan Was Proposed In Good Faith.

Pursuant to § 1129(a)(3), a plan must be "proposed in good faith and not by any means forbidden by law." The Bankruptcy Code does not define "good faith," but the Ninth Circuit has held that "[a] plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code." *Platinum Cap., Inc. v. Sylmar Plaza L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1074 (9th Cir. 2002).

Section 1129(a)(3) directs courts to look only to the proposal of a plan, not its terms. *Garvin v. Cook Invs. NW, SPNWY, LLC*, 922 F.3d 1031, 1035 (9th Cir. 2019). Whether a plan is proposed in good faith is a factual finding based on the totality of the circumstances. *Todeschi v. Juarez (In re Juarez)*,

---

(emphasis added). We assume that, unless a longer period is fixed by the court, plan payments must have a present value of at least the projected disposable income for three years.

603 B.R. 610, 626 (9th Cir. BAP 2019) (citations omitted); *Franklin High Yield Tax-Free Income Fund v. City of Stockton (In re City of Stockton)*, 542 B.R. 261, 279 (9th Cir. BAP 2015).

Global offers no argument why Debtor's proposal of the plan was not in good faith or why the bankruptcy court clearly erred in its finding. Global's arguments relate to good faith in filing the petition and prosecuting the case, not to Debtor's proposal of its Plan. And because the Plan achieves a result consistent with the objectives and purposes of the Code, we discern no error in the bankruptcy court's finding that the Plan satisfies § 1129(a)(3).

### 3. The Plan Is Feasible.

Global argues that the Plan is not feasible because Debtor had continual loses throughout the case and Debtor's projected future income is unsubstantiated.

Section 1129(a)(11) requires the court to determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . ." The purpose of the requirement is to "prevent confirmation of visionary schemes which promise creditors . . . more under a proposed plan than the debtor can possibly attain after confirmation." *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985).

To demonstrate feasibility, a plan proponent must show a "reasonable probability" of success. *In re Acequia*, 787 F.2d at 1364. So long

15

as adequate evidence supports the bankruptcy court's finding, a relatively low threshold of proof will satisfy the requirement. *In re Brotby*, 303 B.R. at 191.

The bankruptcy court determined that the Plan had a reasonable probability of success based on Debtor's projections. It reasoned that Debtor's performance during the period of uncertainty surrounding SB10 was not relevant to Debtor's ability to successfully reorganize after SB10 was repealed. The court determined that Debtor's projections, though optimistic, were based on its historical performance prior to enactment of SB10 and the COVID-19 pandemic. The bankruptcy court's findings are not clearly erroneous.

Additionally, the Plan does not require Debtor to meet its projections to succeed. As discussed above, the effective date payment satisfies the minimum fair and equitable requirement. The Plan provides for payments of actual disposable income and conditions Debtor's discharge on those payments totaling at least $181,000. But the Plan specifically provides that if Debtor does not generate actual disposable income no payments will be due to creditors. In other words, if Debtor's projections are as fanciful as Global argues, Debtor may not receive a discharge, but it will comply with Plan requirements.

The bankruptcy court did not err in finding the Plan feasible, and it did not abuse its discretion by confirming the Plan.

16

**B.** **The Bankruptcy Court Did Not Err By Refusing To Dismiss Or Convert The Case.**

Global argues that the court should have granted the Dismissal Motion because cause existed under § 1112(b) based on: (1) Debtor's bad faith in filing the petition; (2) Debtor's failure to satisfy subchapter V deadlines upon amending its petition; and (3) Debtor's substantial and continuing loss during the pendency of the case without a reasonable likelihood of rehabilitation.

Global also contends that, under § 1112(b)(3), the bankruptcy court was required to commence a hearing on the Dismissal Motion within 30 days of filing and decide the motion within 15 days of the hearing. Global did not raise this argument in the bankruptcy court or in its opening brief and thus, has waived the issue.[8] *See Mano-Y & M, Ltd. v. Field (In re Mortg. Store, Inc.)*, 773 F.3d 990, 998 (9th Cir. 2014) ("A litigant may waive an issue

---

[8] Even if we were to consider the argument, it does not result in reversible error. First, not only did Global fail to raise § 1112(b)(3) in the bankruptcy court, but it also arguably consented to a continuance at the June 2020 hearing, and it expressly consented to a continuance at the December 2020 hearing. Second, § 1112(b)(3) permits a bankruptcy court to decide a motion to dismiss or convert beyond the 15-day time limit if "compelling circumstances" exist. The time limit is flexible, and the court has authority to extend the time limit if necessary. *See Green v. Howard Fam. Tr. (In re Green)*, BAP Nos. NV-15-1349-KiLDo, NV-15-1360-KiLDo, 2016 WL 6699311, at *9 (9th Cir. BAP Nov. 9, 2016). Here, the court initially continued the hearing so that it could decide the Dismissal Motion in the context of an amended plan and with input from Trustee. It further continued the hearing to decide the motion after the results of the referendum; all parties agreed that repeal of SB10 was essential to Debtor's reorganization effort. Finally, § 1112(b)(3) is not self-effectuating; the statute does not provide for a specific consequence for either party if the bankruptcy court does not conduct the hearing or decide the motion within the time limits. *Id.*

17

by failing to raise it in a bankruptcy court."); *Alaska Ctr. For Env't v. U.S. Forest Serv.*, 189 F.3d 851, 858 n.4 (9th Cir. 1999) (stating that arguments not made in an appellant's opening brief are waived and cannot be raised for the first time in a reply brief).

The bankruptcy court denied the Dismissal Motion as moot after it confirmed Debtor's Plan. Although the court did not make express findings, we apply the clear error standard to implied as well as express factual findings, *Roth v. Educational Credit Management Corp. (In re Roth)*, 490 B.R. 908, 915 (9th Cir. BAP 2013), and we do not substitute our judgment for that of the bankruptcy court. *Smith v. James Irvine Found.*, 402 F.2d 772, 774 (9th Cir. 1968).

### 1. Bad Faith

Filing a bankruptcy petition in bad faith constitutes "cause" for dismissal or conversion under § 1112(b). *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994). The analysis focuses on whether a debtor is attempting "to effect a speedy, efficient reorganization on a feasible basis" or "to unreasonably deter and harass creditors." *Id.* A petition may be filed in bad faith if a debtor seeks to achieve objectives outside the legitimate scope of the bankruptcy laws or if it is an apparent two-party dispute that can be resolved outside of bankruptcy court. *Id.*; *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 616 (9th Cir. BAP 2014).

Bad faith depends on an amalgam of factors and no specific factor is determinative. *Idaho Dep't of Lands v. Arnold (In re Arnold)*, 806 F.2d 937, 939

18

(9th Cir. 1986). A finding of bad faith is made on a case-by-case basis; there is no list of factors which must be present in each case to make the finding, and the weight given to any factor depends on the circumstances of the individual case. *Can-Alta Props., Ltd v. State Sav. Mortg. Co. (In re Can-Alta Props., Ltd.)*, 87 B.R. 89, 91 (9th Cir. 1988); *Meadowbrook Invs.' Grp. v. Thirtieth Place, Inc. (In re Thirtieth Place, Inc.)*, 30 B.R. 503, 506 (9th Cir. BAP 1983).

"Perhaps the most compelling grounds for denying a motion to dismiss grounded on bad faith is the determination that a reorganization plan qualifies for confirmation . . . because a debtor's showing that a plan of reorganization is ready for confirmation essentially refutes a contention that the case is filed or prosecuted in bad faith." *In re Marshall*, 721 F.3d at 1049 (cleaned up).

Global argues that the bankruptcy court erred because several factors weighed in favor of finding bad faith, including that Debtor filed the case to avoid posting a bond in the state court appeal, the case is essentially a two-party dispute, and Debtor incurred significant administrative claims to the detriment of its unsecured creditors.

But the bankruptcy court considered the factors argued by Global and rejected its claim that the petition was filed in bad faith. The court's finding is neither illogical nor implausible, and it is supported by the record. Although Global held a considerable portion of the debt in this case, Debtor had other creditors and legitimate reasons for filing the

19

petition. Debtor was stayed from foreclosing on the Saddozai Property, and without its largest asset, Debtor lacked sufficient resources to pay Global's judgment, post a bond in the appeal, or continue ongoing operations.

## 2. Subchapter V Deadlines

On appeal, Global concedes that Debtor could amend its petition to proceed under subchapter V. But Global argues that Debtor's amendment created cause to dismiss or convert under § 1112(b)(4)(J) because it was impossible for Debtor to comply with the statutory deadline for filing a plan under § 1189(b). Section 1112(b)(4)(J) provides that cause to dismiss or convert exists where a debtor fails to file or confirm a plan within the time fixed by the Bankruptcy Code or set by order of the court.

Section 1189(b) requires a debtor under subchapter V to file its plan within 90 days of the order for relief but permits the court to extend the deadline "if the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable." The bankruptcy court implicitly did so when it set, and later extended, the deadline for Debtor to file its amended disclosure statement and plan after Debtor amended its petition. Section 1189(b) does not limit the court's ability to extend the deadline prior to its expiration. *See In re Tibbens*, No. 19-80964, 2021 WL 1087260 (Bankr. M.D.N.C. Mar. 19, 2021). And Debtor amended its petition within weeks of subchapter V becoming effective. Global provides no argument why the court's extensions were an abuse of

discretion, and we see none. Because the court extended the deadline, there was no cause to dismiss or convert under § 1112(b)(4)(J).

### 3.    Section 1112(b)(4)(A)

Global's argument that there was cause to dismiss or convert under § 1112(b)(4)(A) is similarly unavailing. Under § 1112(b)(4)(A), a movant must "establish both (1) a substantial and continuing loss to or diminution of the estate and (2) absence of a reasonable likelihood of rehabilitation." *Hassen Imps. P'ship v. City of West Covina (In re Hassen Imps. P'ship)*, BAP No. CC-13-1042-KiPaD, 2013 WL 4428508, at *13 (9th Cir. BAP Aug. 19, 2013) (citations omitted).

The first element may be established by demonstrating that a debtor maintained a negative cash flow position after the petition date or incurred a loss that would (1) negatively impact the estate and interest of creditors; or (2) result in unpaid postpetition debts and administrative expenses that take priority over prepetition claims. *Id.* The second element requires the bankruptcy court to determine whether the continuing losses can be corrected and whether Debtor is capable of rehabilitation. 7 COLLIER ON BANKRUPTCY ¶ 1112.04 [6][a][ii] (Alan N. Resnick & Henry J. Sommer, eds. 16th ed. rev. 2021). "In almost every case, the debtor's prospects will depend on whether the debtor has formulated, or can formulate within a reasonable amount of time, a reasonably detailed business plan." *Id.*

21

Global maintains that the Debtor's monthly operating reports established the first element of § 1112(b)(4)(A) and the second element was satisfied because Debtor's Plan was not confirmable.

Debtor's ability to rehabilitate depended largely on whether it could recover the Saddozai Property and whether SB10 would be repealed by the referendum. Global specifically argued in the Dismissal Motion that Debtor would be unable to rehabilitate because of the effect of SB10 and the likelihood that voters would not repeal SB10 in the referendum.

Even at the time Global filed the Dismissal Motion, there was not an absence of a reasonable likelihood of rehabilitation because foreclosure efforts and the referendum were pending, and it was reasonable they could prove favorable to Debtor's reorganization. The court appropriately continued the hearing. After the referendum results and recovery of the Saddozai Property, Debtor's ability to rehabilitate became clear, and Debtor proposed a confirmable plan of reorganization. The bankruptcy court did not abuse its discretion by denying the Dismissal Motion.

## C.    We Do Not Apply The Doctrine Of Equitable Mootness.

Debtor urges us to dismiss the appeal from the confirmation order as equitably moot. Equitable mootness is "a judge-made abstention doctrine unrelated to the constitutional prohibition against hearing moot appeals." *Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.)*, 771 F.3d 1211, 1214 (9th Cir. 2014) (internal quotation marks omitted). We have discretion to dismiss an appeal as equitably moot "when a comprehensive change of

22

circumstances has occurred so as to render it inequitable for [the] court to consider the merits of the appeal." *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 880 (9th Cir. 2012) (internal quotation marks omitted). Because we affirm the bankruptcy court's confirmation order on the merits, we decline to reach the question of equitable mootness.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's order confirming Debtor's Plan and AFFIRM its order denying Global's Dismissal Motion.